## State of Vermont v. Tina M. Alger

[559 A.2d 1087]

No. 87-139

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed March 31, 1989

---

316

*William T. Keefe, Addison County Deputy State's Attorney,* Middlebury, for Plaintiff-Appellee.

*Charles S. Martin* and *Deborah Palmucci, Law Clerk (On the Brief),* of *Martin & Paolini,* Barre, for Defendant-Appellant.

**Peck, J.** Defendant, Tina Alger, was charged with possession of stolen property in violation of 13 V.S.A. § 2561, based on evidence obtained in a search of her apartment conducted pursuant to a warrant. Defendant moved to suppress the evidence, alleging that the search warrant was issued without probable cause. The trial court denied the motion to suppress, concluding that there was sufficient basis of knowledge and veracity in the affidavit to make it fairly probable that evidence of a crime would be found at the apartment. The trial court subsequently granted defendant's motion for permission to take an interlocutory appeal pursuant to V.R.A.P. 5(b). We affirm.

Defendant lived with Mike Coyle while Coyle was employed by K-Mart, a department store in South Burlington. Sergeant John Dugan of the Vergennes Police Department obtained a warrant to search defendant's apartment on Main Street in Vergennes based upon an affidavit which set forth the following facts.

Three anonymous telephone calls were received by K-Mart management personnel which implicated Coyle in theft from the store. Two of the calls were received by Wesley Smith, who worked at K-Mart as the "loss prevention manager." The first

call, made on August 31, 1986, stated only that security in the store needed to be increased immediately. The second caller, who spoke with the store manager on September 7, 1986, stated that "Mike from Vergennes" and an accomplice who worked in receiving were stealing and subsequently selling appliances and other merchandise from K-Mart. The caller alleged that some of the items were taken before they were recorded in the store's inventory log. The caller's description of "Mike" fit Mike Coyle.

Smith conducted an inventory check on appliances and found that a color television, several stereos, two video recorders (VCRs) and a microwave had disappeared from the store in the prior month. Two weeks later the stockroom manager informed Smith that in casual conversation Coyle had mentioned that he purchased an RCA VCR in Vergennes for $250. When the stockroom manager asked Coyle what store had sold the VCR, he stated that he could not remember.

On September 29, 1986, Smith received a third anonymous call, which relayed that the apartment inhabited by Coyle and the defendant was "full" of stolen microwaves, stereos, televisions and other items. Another inventory check by Smith, conducted two days later, revealed that three VCRs, four televisions and one stereo had been delivered, but were never recorded in the store's inventory control log and were missing frrom the store.

On October 13, 1986, Smith was in the store bathroom when he observed Coyle leave the bathroom and then heard someone rummaging in the utility closet directly adjacent to the bathroom. Smith checked the closet and found a new pair of camouflage hunting pants concealed in a plumbing access hole. Smith left the pants concealed there and observed the closet area throughout the day. He last checked to see if the pants were still in the closet at 3:55 p.m. After checking, he went to the security window overlooking the area to keep watch. Smith saw Coyle enter the hallway where the closet was located and then leave, adjusting something under his coat. Smith quickly returned to the closet and discovered that the pants were no longer there. Coyle was the only person seen by Smith in the hallway between 3:55 and 4:07 p.m.

Attached to Sergeant Dugan's affidavit were three unsworn, signed statements made by Smith on October 2nd and 13th, which conveyed the information contained in the affidavit, and other details. The affidavit also noted that Dugan had confirmed

the defendant's address, that she lived with Coyle, and that the only store in Vergennes which sold video recorders did not market the RCA brand referred to by Coyle in his discussion with the stockroom manager. Based on the affidavit, the judicial officer issued a warrant to search the apartment. The search uncovered a stero, television, microwave and RCA video recorder, all inventory missing from K-Mart.

## I.

Defendant was arrested and charged with possesion of stolen property, in violation of 13 V.S.A. § 2561. At trial, the defendant filed a motion to suppress the evidence found during the search based on lack of probable cause for issuance of the warrent. Her motion was denied, and this interlocutory appeal was granted by the trial court.

■ Probable cause is established through a sworn affidavit, filed with an application for a search warrant. The affidavit must show "circumstances from which a 'man of reasonable caution' would conclude that a crime has been or is being committed and that evidence of that crime will be found in the place to be searched." *State* v. *Howe,* 136 Vt. 53, 61, 386 A.2d 1125, 1130 (1978) (citations omitted); see V.R.Cr.P. 41(c).

Where hearsay is a component of information provided to the judicial officer as a basis for probable couse, this Court has held that V.R.Cr.P. 41(c) requires that the tests laid out in *Aguilar* v. *Texas,* 378 U.S. 108 (1964), and *Spinelli* v. *United States,* 393 U.S. 410 (1969), be applied.* *State* v. *Ballou,* 148 Vt. 427, 434, 535 A.2d 1280, 1284 (1987). First, the information supplied to the judicial officer must show a "basis of knowledge" from which the judicial officer can draw his or her own conclusions about probable cause. *State* v. *Barrett,* 132 Vt. 369, 373, 320 A.2d 621, 624 (1974). Second, the veracity of the information must be demonstrated in either of two ways: by proof of the inherent credibility of the source of the hearsay, or "by the presence of factors reasonably demonstrating the 'reliability' of the information fur-

---

* Defendant challenges the warrant under both Vermont and federal constitiutional standards, in the latter referring to *Illinois* v. *Gates,* 462 U.S. 213 (1983). Discussion of the *Gates* standard is not necessary here because the *Aguilar* and *Spinelli* standards, which are met, are stricter.

nished by the informer." *Id.* at 374, 320 A.2d at 625; see V.R.Cr.P. 41(c).

We apply these standards in our analysis while keeping in mind that the judicial officer's initial determination of probable cause should be given "great deference" by this Court. *Ballou,* 148 Vt. at 434, 535 A.2d at 1284. In addition, "[a]ffidavits must be viewed in a common sense manner and not be subjected to hypertechical scrutiny." *Id.; State* v. *Moran,* 141 Vt. 10, 16. 444 A.2d 879. 882 (1982).

■ The first prong of the *Aguilar-Spinelli* test requires that a "basis of knowledge" be set out in the information provided to the judicial officer. The hearsay component of the information "[t]o pass muster, . . . must transmit the factual basis for the conclusions, so that the magistrate may make his own direct analysis." *Barrett,* 132 Vt. at 373. 320 A.2d at 624; see *Stanley* v. *State,* 19 Md. App. 508, 524-25, 313 A.2d 847, 858 (1974).

The hearsay contained in the affidavit was taken directly from Smith's statements to the police and included the first-hand observations of Smith, observations from other employees at K-Mart, and the anonymous telephone calls. Significantly, Smith's statements were "set forth in detail rather than conclusory form." *Ballou,* 148 Vt. at 434-35, 535 A.2d at 1284. Smith relayed not only his misgivings about Mike Coyle, but also the information that gave rise to his suspicions: the telephone calls, inventories of missing merchandise, the observations of the stockroom manager, and his own observations, including the incident with the camouflage pants. Smith's account of these events was laid out in his own unsworn statements, appended to Sergeant Dugan's affidavit. Pertinent details from these statements were recounted in the sworn affidavit. The facts sworn to by the police officer were sufficient to allow the judicial officer to reach his own conclusion that probable cause existed without relying on the conclusions of Smith or the officer. While Smith's conclusions, or any one of the details standing alone, would have been too tenuous to establish a "basis of knowledge," in the aggregate they are sufficient to show a factual basis from which the judicial officer could draw his own conclusions.

## II.

■ The veracity of the information in the affidavit may be established either by the inherent credibility of the hearsay source or the reliability of the data provided by the hearsay source. *Id.* We believe the judicial officer's reliance on the credibility of the source of the hearsay to be reasonable under the present circumstances. *Id.*

In *State v. Marquis*, 525 A.2d 1041 (Me. 1987), the Supreme Court of Maine upheld a magistrate's probable cause determination based in part on the fact that the source of the hearsay was a representative of the business from which the defendant had stolen merchandise. The court held that, because the hearsay source was a representative of the victimized business, there was "sufficient basis for the magistrate's reliance upon his statement" to the police. *Id.* at 1043. The hearsay source in *Marquis* was employed by the victimized business as a security or "theft-prevention officer," as was Smith in this case. Similarly, we hold that the relationship of the loss-prevention manager, Smith, to the victimized business is a sufficient basis for attributing credibility to his statements to the police.

Smith's inherent credibility is bolstered by "factors reasonably demonstrating the 'reliability' of the information furnished." *Barrett*, 132 Vt. at 374, 320 A.2d at 625. The anonymous calls, received by Smith and the store manager, alleged that Coyle had stolen, among other things, a VCR and had stored it at the apartment. Smith's review of the inventory log showed such an appliance was missing. Subsequent to the call, the stockroom manager reported that Coyle could not remember the name of the store from which he "purchased" his RCA VCR. After Smith reported the conversation in his statement to the police, independent police investigation revealed that no store in Vergennes, where Coyle alleged he bought the appliance, had ever sold RCA video recorders. These data, taken together, reasonably supported the reliability of the affidavit.

■ Smith's statement to the police is laden with double hearsay. However, double hearsay is not necessarily unreliable for the purpose of finding probable cause. "[W]hen a magistrate receives an affidavit which contains hearsay upon hearsay, he need not categorically reject this double hearsay information." *United States v. Smith*, 462 F.2d 456, 459 (8th Cir. 1972). In order to

confirm the reliability of the double hearsay, we must ask whether it can be reasonably inferred that "the informant had gained his information in a reliable way." *Id.* (citing *Spinelli*, 393 U.S. at 417). Smith, in performance of his duties for the victimized corporation, relied on the stockroom manager's statements. These statements may be attributed with credibility due to the declarant's relationship to the victimized corporation. Additional information, while suggested to Smith by an anonymous telephone caller, was correlated with Smith's inventory of missing items and his own observations of Coyle.

We find that the *Aguilar* and *Spinelli* tests as embodied in V.R.Cr.P. 41(c) are adequately met. The cumulative information provided a "basis of knowledge" with sufficient credibility for a reasonable person to conclude that evidence of the suspected crime would be found at the defendant's apartment.

*Affirmed.*