2005 VT 41

# State of Vermont v. Tad A. Goldberg
# State of Vermont v. William Anderson

[872 A.2d 378]

Nos. 03-550 and 03-573

Present: **Dooley, Johnson, Skoglund and Reiber, JJ., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed March 25, 2005

*William H. Sorrell*, Attorney General, and *John Treadwell*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Paul S. Volk* and *Jason J. Sawyer* of *Blodgett, Watts & Volk, P.C.*, Burlington, for Defendant-Appellant Goldberg.

*Robert P. Keiner*, Middlebury, for Defendant-Appellant Anderson.

¶ 1. **Allen, C.J. (Ret.), Specially Assigned.** Defendants Tad Goldberg and William Anderson were convicted separately of cultivating and possessing marijuana in violation of 18 V.S.A. § 4230(a)(2), (4) after a police search uncovered a growing operation in their home. They now take this consolidated appeal, contending: (1) that the district court erred in admitting evidence seized during the search because the authorizing warrant issued without probable cause; and (2) that the district court erred in failing to conduct a hearing on the warrant's merits pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Defendants argue that the warrant should not have issued based solely on an uncorroborated tip from an informant with a significant criminal record, particularly when the informant hoped to exchange his information for consideration in a pending prosecution. We agree and conclude that the warrant issued without probable cause. We therefore reverse the district court on this ground, and do not reach the issue of whether the facts required a *Franks* hearing in this case.

¶ 2. In November 2002, Chittenden County State's Attorney John St. Francis contacted Burlington Police Detective Shawn Burke to advise him that a man facing DWI charges had come forward with information about a marijuana growing operation in Ferrisburg. Detective Burke then met with the informant, Patrick Dower, and his attorney to discuss the details of the operation. Dower said that he had seen roughly forty marijuana plants at a house occupied by several former college students — including defendants — from Brandon. He described some details about the growing operation, including its location in a basement crawl space, and the lighting and drying mechanisms employed. Dower also claimed that on November 8, 2002,

he accompanied defendants on a trip to Burlington to conduct "business" with a man who sold the marijuana they cultivated.

¶ 3. Detective Burke asked Dower to accompany him on a drive-by of the house, and he then ran a Department of Motor Vehicles (DMV) check on the names that Dower provided. The records check turned up three of the four names, and it revealed that each of the three had previous addresses in Brandon. Although the DMV records showed the Ferrisburg address for two of the individuals, it indicated that defendant Anderson resided in South Burlington. The records also indicated that defendant Goldberg had once been a student at the University of Vermont. Detective Burke then asked Dower to return to the Ferrisburg house that evening to confirm that the cultivation was ongoing. After receiving confirmation, Detective Burke prepared an affidavit recounting Dower's information and the result of the DMV check, which he then submitted as part of his application for a warrant authorizing the search of defendants' home.

¶ 4. The district court issued the warrant, and the resultant search uncovered a significant growing operation and evidence of marijuana distribution. Defendants were then arraigned and charged with marijuana cultivation and possession pursuant to 18 V.S.A. § 4230(a)(2), (4). Defendants later submitted motions seeking to suppress the evidence seized during the search and dismiss the proceedings. The motions alleged that the warrant should not have issued without some independent corroboration of the information Dower provided, and that Detective Burke's affidavit contained several false statements and omitted essential information in reckless disregard of the truth.

¶ 5. At a consolidated motion hearing, Detective Burke conceded that he had not presented the court with information about the consideration Dower expected to receive in his pending prosecution, nor had he provided the court with the details of Dower's criminal history. Had he performed a check of Dower's record he would have discovered several criminal offenses, including possession of stolen property and petit larceny. Detective Burke acknowledged, however, that he had not investigated Dower as thoroughly as he would a typical informant because Dower came to him through a state's attorney, and he had an attorney present at the initial interview. He believed Dower's lawyer would advise him of the penalties for false reporting, making it less likely that he would lie.

¶ 6. Defendants also pressed Detective Burke to explain why his affidavit in support of the warrant contained several factual inaccuracies. First, defendant Goldberg demonstrated that he was out of the

country on November 8, 2002, making it impossible for Dower to accompany him on a trip into Burlington. Second, defendants argued that the affidavit incorrectly identified a fourth member of their household, a "Dave" or "Dan" thought to be romantically linked to a female roommate. Third, defendants noted that Burke's affidavit asserted that Dower had identified several "cloned" plants at the residence, but Dower testified during his deposition that he could not recognize a marijuana plant, much less a "clone," without assistance. Finally, the affidavit stated that Dower had accompanied defendants to a distributor's house in Burlington to "conduct business," but Dower later denied making this trip during his deposition. Detective Burke acknowledged some of the inaccuracies, but was surprised to learn that Dower had denied recognizing the plants or making the trip to the distributor's house.

¶ 7. Given these inaccuracies and omissions, defendants made two arguments to the court. First, they argued that the affidavit, which simply recounted Dower's story with little independent corroboration and without mentioning his criminal record or detailing his pending prosecution, did not establish probable cause to issue the warrant. Second, defendants argued that the factual inaccuracies, coupled with the omission of Dower's criminal history, compelled the court to conduct a *Franks* hearing to reevaluate the affidavit. The court denied the motion to suppress, however, and declined to hold an additional hearing. Defendants then entered conditional nolo contendere pleas, and this appeal followed.

¶ 8. We defer to a judicial officer's finding of probable cause, and we will not subject a supporting affidavit to "hypertechnical scrutiny." *State v. Demers*, 167 Vt. 349, 353, 707 A.2d 276, 278 (1997) (quotations omitted). Generally, probable cause exists when the affidavit sets forth such information that "a judicial officer would reasonably conclude that a crime had been committed and that evidence of the crime will be found in the place to be searched." *State v. Morris*, 165 Vt. 111, 129, 680 A.2d 90, 102 (1996). We must, however, examine the information available to the court at the time the warrant issued, without reference to whether the search turned up the evidence the informant described. See *State v. Cooper*, 163 Vt. 44, 51, 652 A.2d 995, 999 (1994) (explaining that "key inquiry" in determining whether court had probable cause to issue warrant is "whether the *information provided in the affidavit*" justifies the search (quotations omitted and emphasis added)).

100

■ ¶ 9. In two decisions rendered in the 1960s, the U.S. Supreme Court established a two-pronged test to evaluate. probable .cause determinations based on hearsay evidence. *Aguilar v. Texas*, 378 U.S. 108 (1964); *Spinelli v. United States*, 393 U.S. 410 (1969). The first prong requires an analysis of the informant's basis of knowledge, while the second examines his or her veracity. *Aguilar*, 378 U.S. at 114; *Spinelli*, 393 U.S. at 413. Although the Supreme Court has since abandoned this standard and held that the United States Constitution requires a "totality of the circumstances" approach to probable cause determinations, *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983), we have continued to apply the two-pronged test to cases decided under the Vermont Constitution, *State v. Alger*, 151 Vt. 315, 318, 559 A.2d 1087, 1090 (1989). The *Aguilar-Spinelli* standard strikes an appropriate balance between individual Vermonters' right to privacy and the police's important interest in preventing crime, and it has since been codified in Vermont Rule of Criminal Procedure 41(c).

¶ 10. Rule 41 provides, in relevant part:

> The finding of probable cause shall be based upon substantial evidence, which may be hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished.

V.R.Cr.P. 41(c). To satisfy the rule's "factual basis" prong, the informant's tip "must transmit the factual basis for the conclusions, so that the magistrate may make his own direct analysis." *Alger*, 151 Vt. at 319, 559 A.2d at 1090 (quotations omitted). In this case, Detective Burke's affidavit reported that Dower gathered his information based on personal observations, and therefore defendants do not dispute that the first part of the test is satisfied. Rather, defendants challenge Dower's "credibility" pursuant to the rule's second prong.

■ ¶ 11. An affidavit may establish an informant's credibility in either of two ways: (1) by demonstrating his or her inherent credibility as a source; or (2) by demonstrating the reliability of the information he or she has provided on the occasion in question. *Id.* at 320, 559 A.2d at 1091; *Morris*, 165 Vt. at 130, 680 A.2d at 102. An informant's inherent credibility is typically established by evidence that he or she "has provided correct information in the past," while particular information is generally deemed inherently reliable if the informant acted against penal interest, or if police corroborated the information "to the point where it would be reasonable for them to rely on it as

accurate." *Morris*, 165 Vt. at 130, 680 A.2d at 102-03. After careful review, we are persuaded that the supporting affidavit in this case failed to demonstrate either basis of credibility, and therefore it did not establish the probable cause necessary to issue the search warrant at issue in this case.

¶ 12. We look first to whether Detective Burke's affidavit gave the court reason to believe that Dower was an inherently credible informant. The affidavit did not indicate that Dower had a track record of providing police with credible information. In fact, the only background information the affidavit presented about Dower was that he "wished to provide his information to law enforcement for consideration on his pending criminal case in Chittenden District Court." Detective Burke provided no further information about the nature of Dower's prosecution, or the consideration he hoped to receive. Notably, the affidavit also failed to describe Dower's criminal history. Detective Burke conceded that normally he would investigate an informant's criminal history, but he chose not to in this case because Dower came to him from a state's attorney's office. Defendants point out, however, that such a check would have revealed convictions for possession of stolen property and petit larceny. As it is, there is almost nothing in the affidavit to suggest that Dower was inherently reliable, and, if anything, the information regarding Dower's pending criminal case tends to weigh against his credibility. Probable cause could not have arisen, therefore, from Dower's inherent credibility as an informant.

¶ 13. We turn, therefore, to the reliability of Dower's information as presented in Detective Burke's affidavit. As discussed above, in undertaking this analysis we generally look to whether the informant acted against penal interest, or whether the police independently corroborated the information provided. *Morris*, 165 Vt. at 130, 680 A.2d at 102-03. Again, the affidavit indicated that, not only was Dower *not* acting against penal interest, but he actually provided the information in exchange for consideration in an unrelated pending criminal prosecution. The remaining question, then, is whether Detective Burke made sufficient efforts to corroborate Dower's story, and presented evidence of that corroboration to the court.

¶ 14. From the affidavit, it appears that Detective Burke's only attempts at corroboration were a drive-by of the residence, and a DMV check of the names that Dower gave him. Although the drive-by allowed the detective to describe the outside of the house in some

detail, it did very little to verify Dower's account of the marijuana growing operation. At the hearing on the motion to suppress, Detective Burke conceded that it might have been better to obtain utility records for the address, or conduct surveillance on the house for some period of time in an effort to corroborate Dower's information. The step he did take, which was to perform a DMV check, showed the Ferrisburg address for three of the four names Dower provided, and indicated that all four had once lived in Brandon as Dower suggested. The check also indicated, however, that defendant Goldberg had an address in South Burlington. While the DMV report did corroborate some of the peripheral details of Dower's story, it did nothing to confirm the allegations of criminal conduct. Overall, the affidavit provided little evidence that Detective Burke had corroborated Dower's information about the marijuana growing operation.

¶ 15. The State argues, however, that we should move beyond the traditional rubric — as the district court did — and evaluate the information's reliability based on the fact that the police knew Dower's name, and that his lawyer was present when he gave his information. Indeed, the State points to our cases establishing a presumption of reliability for information given by a named citizen informant. See, e.g., *State v. Riefenstahl*, 172 Vt. 597, 598, 779 A.2d 675, 677 (2001) (mem.) ("[I]nformation about criminal or suspicious activity from a citizen, who is not a paid informant and is unconnected with the police, is presumed to be reliable."). This presumption is founded on the notion that the typical citizen informant has no incentive to lie to the police, and is accountable for false reporting if the information proves untrue.

¶ 16. The problem with the State's position in this case, however, is that Dower was not a typical citizen informant without any connection to the police. Rather, he was facing prosecution on a serious criminal charge, and hoped to exchange his information for a favorable plea agreement. Our cases attaching a presumption of reliability to named citizen informants expressly distinguish between citizens who simply come forward in the interest of law enforcement, and informants who have a preexisting relationship with the police. *Id.*

¶ 17. Other states that continue to employ the *Aguilar-Spinelli* standard generally have drawn a similar distinction. See, e.g., *State v. Hernandez*, 804 P.2d 417, 419-20 (N.M. Ct. App. 1990) (declining to presume tipsters' reliability pursuant to "citizen-informer rule" when police affidavit did not demonstrate that informants were "motivated by good citizenship" or "act[ing] openly in aid of law enforcement");

*State v. Yeomans*, 10 S.W.3d 293, 296 (Tenn. Crim. App. 1999) ("Information provided by an ordinary citizen is presumed to be reliable ... [but] if the source is a criminal informant, reliability must be determined by the two-pronged *Aguilar Spinelli* test ...."); *State v. Northness*, 582 P.2d 546, 549 (Wash. Ct. App. 1978) (attributing greater reliability to "ordinary citizen" than to "criminal or professional informant"). The California Supreme Court summarized the issue well in a decision rendered when it still applied *Aguilar-Spinelli*: "[E]xperienced stool pigeons or persons criminally involved or disposed are not regarded as 'citizen-informants' because they are generally motivated by something other than good citizenship." *People v. Smith*, 553 P.2d 557, 560 (Cal. 1976) (quotations omitted). Likewise, certain federal courts acting prior to *Gates* recognized that judges "'should be cautious in accepting the assertion that one who apparently was present when narcotics were used or displayed is a presumptively reliable citizen-informer ... because as a general proposition [he or she] is an informant from the criminal milieu.'" *United States v. Button*, 653 F.2d 319, 326 (8th Cir. 1981) (quoting 1 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.4, at 601-02 (1978)).

¶ 18. Given that Dower gave his information in exchange for consideration on a pending case, we cannot attach the same presumption of reliability to his story that we would to a tip from a typical named citizen informant. Further, unlike the district court, we are not persuaded that the presence of Dower's defense attorney made it significantly less likely that he would lie to the police. Accordingly, we decline the invitation to depart from the established standards governing the reliability of hearsay information in probable cause determinations, and conclude that Detective Burke's affidavit contained insufficient evidence of independent corroboration to justify issuing the search warrant in this case.

¶ 19. Given this conclusion, we reverse the district court's order denying defendants' motion to suppress the evidence seized during the search. The exclusionary rule is intended to safeguard the Fourth Amendment through its deterrent effect, *State v. Chapman*, 173 Vt. 400, 406, 800 A.2d 446, 451 (2002), and its application here encourages police to diligently corroborate information from a potentially unreliable source. Such practice not only helps protect Vermonters' right to privacy, but will also ultimately result in more thorough and careful police work. Because our conclusion that the search warrant issued without probable cause is dispositive of this case, we do not reach the

issue of whether the affidavit's factual errors and omissions required the court to conduct a *Franks* hearing.

*Reversed.*