NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 128

No. 2015-440

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Grand Isle Unit, |
| | Criminal Division |
| | |
| Stuart Cleland | September Term, 2016 |

A. Gregory Rainville, J.

William H. Sorrell, Attorney General, and Paul A. Barkus, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

Allison N. Fulcher of Martin & Associates, Barre, for Defendant-Appellant.

PRESENT:  Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1.    **SKOGLUND, J.**  Following his conditional guilty plea to drug and child-cruelty charges, defendant appeals the trial court's denial of his motion to suppress, arguing that the affidavit submitted in support of a search warrant of his residence did not provide probable cause for issuance of the warrant.  We affirm.

¶ 2.    On June 7, 2013, after a nearly month-long investigation regarding a clandestine methamphetamine operation, a detective with the Vermont State Police applied for and obtained a warrant to search the residence and curtilage at a specified address on Windmill Point Road in Alburg, Vermont.  The search warrant was executed three days later by the state police and associated law enforcement units.  As a result of the search, defendant was charged with

manufacturing methamphetamine, possessing the precursors used to produce methamphetamine, conspiracy, and child endangerment. The conspiracy charge was later dismissed.

¶ 3. Defendant filed a motion to suppress evidence gathered from the search and to dismiss the charges, arguing that the affidavit submitted in support of the search warrant failed to establish the requisite probable cause for issuance of the warrant. On June 30, 2015, following a February 19, 2015 motion hearing, the trial court denied the motion. In relevant part, the court ruled that: (1) the information in the affidavit contained substantial evidence from which a judge could independently and reasonably conclude that a crime had been committed and that evidence of the crime would be found at the specified address; and (2) although many of the hearsay statements in the affidavit could not be considered reliable under the applicable test, those hearsay statements that were reliable, considered along with other nonhearsay information contained in the affidavit, were sufficient to support issuance of the warrant. On October 19, 2015, defendant entered into a conditional plea under which he reserved the right to appeal the denial of his motion to suppress and dismiss.

¶ 4. On appeal, defendant argues that the affidavit submitted in support of the search warrant failed to provide sufficient facts to establish: (1) a connection between the alleged crime and the place to be searched; (2) the reliability of the hearsay statements contained in the affidavit; and (3) a factual basis for the hearsay statements. Our standard of review is well established:

> In reviewing a motion to suppress, we are deferential to the factual determinations and inferences made in the initial determination of probable cause, but we review conclusions of law without deference. Where, as here, the motion is to suppress evidence seized pursuant to a warrant, the initial finding of probable cause by a judicial officer is given great deference. . . . Even under this heightened deference with regard to factual determinations and inferences drawn therefrom, however, the ultimate question of whether the factual claims in an affidavit are sufficient to amount to probable cause is still a matter of law appropriate for fresh appellate review. Our review is thus to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

2

State v. Chaplin, 2012 VT 6, ¶ 9, 191 Vt. 583, 44 A.3d 153 (quotations and citations omitted).

¶ 5. The standard for determining probable cause is also well-established. "Generally, probable cause exists when the affidavit sets forth such information that a judicial officer would reasonably conclude that a crime had been committed and that evidence of the crime will be found in the place to be searched." State v. Robinson, 2009 VT 1, ¶ 6, 185 Vt. 232, 969 A.2d 127 (quotation omitted). "We examine the totality of the circumstances to determine whether there was substantial evidence supporting the warrant, keeping in mind that affidavits must be viewed in a common-sense manner and not be subjected to hypertechnical scrutiny." State v. Zele, 168 Vt. 154, 157, 716 A.2d 833, 836 (1998) (quotation and citation omitted).

¶ 6. In determining whether hearsay statements incorporated into the affidavit support a finding of probable cause, we employ a two-part test codified in Vermont Rule of Criminal Procedure 41 from Aguilar v. Texas, 378 U.S. 108, 114-15 (1964) and Spinelli v. United States, 393 U.S. 410, 415-16 (1969). See Robinson, 2009 VT 1, ¶ 6; Reporter's Notes, V.R.Cr.P. 41. The rule requires that there be "a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." V.R.Cr.P. 41(d)(1). The credibility prong of the rule requires a showing either that the informant is inherently credible or that the information provided by the informant on that particular occasion is reliable. State v. Arrington, 2010 VT 87, ¶ 14, 188 Vt. 460, 8 A.3d 483. "An informant's inherent credibility is typically established by evidence that [the informant] has provided correct information in the past, while particular information is generally deemed inherently reliable if the informant acted against penal interest, or if police corroborated the information to the point where it would be reasonable for them to rely on it as accurate." State v. Goldberg, 2005 VT 41, ¶ 11, 178 Vt. 96, 872 A.2d 378 (quotation omitted). The factual-basis prong requires an examination of the basis of the informant's knowledge. Arrington, 2010 VT 87, ¶ 13. "To satisfy [this] prong, the informant's

tip must transmit the factual basis for the conclusions, so that the magistrate may make his [or her] own direct analysis." Goldberg, 2005 VT 41, ¶ 10 (quotation omitted).

¶ 7. The affidavit at issue here included the following information: (1) the process for manufacturing methamphetamine, including the use of a key precursor chemical, pseudoephedrine (PSE), commonly found in over-the-counter decongestants and allergy-relief products; (2) the restrictions and reporting requirements regarding the sale of products containing PSE, including prohibiting the purchase of products containing more than 3.6 grams of PSE per day or more than 9 grams within a thirty-day period; and (3) a chart showing defendant's and his domestic partner's purchase of products containing PSE between March and August 2013.

¶ 8. The affidavit then made the following assertions of fact, among others, concerning the investigation of methamphetamine operations in Alburgh:

- Defendant purchased 22.59 grams of PSE between April 19 and May 19, 2013.

- A reliable confidential informant who had made a controlled purchase of narcotics in May 2013 for the Vermont Drug Task Force stated that he knew defendant had been using methamphetamine for the previous two years and had a supplier in New York but did not know if defendant was manufacturing the drug.

- On May 21, 2013, the affiant received a phone call from another named detective informing the affiant that a concerned citizen who wanted to remain anonymous reported, without having first-hand knowledge or seeing the operations, that defendant and his domestic partner were manufacturing methamphetamine with their infant child in the house.

- The following day, the affiant and another detective travelled to "Windmill Dr." in Alburgh and verified that the address was a trailer with the number stated in the affidavit posted on the outside.

- On May 28, 2013, a sergeant with the Grand Island Sheriff's Department informed the affiant that a confidential informant who had provided information in the past leading to an arrest reported that several people told him that defendant was manufacturing methamphetamine at a residence on Windmill Point Road where defendant was living.

- On that same day, the affiant observed a car registered to defendant leave the Windmill Point Road address stated in the affidavit and go to another residence where the confidential informant had indicated methamphetamine was being manufactured.

4

- On June 3, 2013, a police offer informed the affiant that the officer had received a National Precursor Log Exchange hit indicating that defendant had purchased a product containing 3.6 grams of PSE at a Champlain, New York pharmacy.

- That same day, another police officer informed the affiant that defendant had purchased a product containing PSE at a drugstore in St. Albans, Vermont on May 31, 2013.

- A later review of records indicated that defendant had purchased PSE on four occasions at different drug stores in New York and Vermont on April 11 and April 19, 2013.

- On June 4, 2013, police interviewed defendant and presented him with information they had received about his purchases of PSE and his manufacturing of methamphetamine.

- Defendant denied manufacturing methamphetamine and told police he purchased the PSE for a named individual.

- During the interview, defendant waived his Miranda rights and told police that he started using methamphetamine one year earlier, that he was addicted to pills, and that he would obtain methamphetamine from the named individual and then trade the methamphetamine to another named individual in exchange for pills or cash.

- On that same day, the affiant interviewed an individual called Shorty, whom defendant had told police was the first named individual's "right hand man."

- Shorty told police that he heard the named individual had taught defendant how to manufacture methamphetamine.

- The following day, the affiant and another officer interviewed the named individual's girlfriend, who provided a written statement in which she reported that defendant had told her he could make methamphetamine and did not need to buy it.

- The following day, during a second interview with Shorty, Shorty told the affiant that a month earlier at defendant's trailer defendant showed Shorty a white substance that he removed from a drawer under his couch and told Shorty that it was methamphetamine he had manufactured.

- Shorty also told the affiant that on June 1, 2013, defendant came to his house to sell him pills.

- On June 7, 2013, Shorty contacted the affiant and showed him an exchange of text messages with defendant in which defendant indicated he still had drugs for sale.

¶ 9. Defendant acknowledges that information contained in the affidavit may have provided probable cause that a crime had been committed, but argues that it did not provide probable cause that potential evidence of a crime would be found at the specific Windmill Point

Road residence stated in the affidavit. We disagree. There was ample information in the affidavit, including defendant's own statement to police, for an independent judge to reasonably conclude that defendant and his partner had purchased illegal amounts of PSE and that defendant possessed illegal drugs in his residence. The affidavit contained firsthand information of defendant storing drugs in private places within his residence, which was consistent with the affiant's statement as to the habits of drug traffickers.

¶ 10. As for the location of that residence, approximately three weeks before the search warrant was executed a police officer informed the affiant that a confidential informant had told him that defendant and his domestic partner were manufacturing methamphetamine in their residence. The following day the affiant "travelled to [the specified] Windmill Dr.,[*] Alburgh" address and "verified" that the address was a trailer with the specified street number on the outside. One week later, after receiving a report from another police officer that a reportedly reliable confidential informant stated that defendant was making methamphetamine at a trailer in which he was living towards the end of Windmill Point Road in Alburgh, the affiant conducted surveillance at the Windmill Point Road address specified in the affidavit and observed a car registered to defendant leave the residence, stop at a gas station where defendant's domestic partner got out, and then proceed to another residence in which there was a reported methamphetamine operation. This information was sufficient for an independent magistrate to objectively infer that evidence of a crime would be found at the Windmill Point Road address specified in the affidavit. See State v. Melchior, 172 Vt. 248, 251, 775 A.2d 901, 904 (2001) (stating that standard for finding probable cause that evidence of crime will be found in place to be searched "requires something less than the more-likely-than-not standard we rejected in State v. Town, 158 Vt. 607, 613-14, 615 A.2d

---

[*] Defendant did not suggest to the trial court, and has not suggested on appeal, that the Windmill Dr. address referred to in one paragraph of the affidavit is a different residence than the Windmill Point Road address referred to in another paragraph of the affidavit.

6

484, 487-88 (1992)"); United States v. Gaviria, 805 F.2d 1108, 1115 (2d Cir. 1986) (stating that "the probable cause standard does not deal with hard certainties, but with probabilities" (quotation omitted)).

¶ 11. Defendant argues, however, that neither prong of the Rule 41 test regarding hearsay evidence was met in this case insofar as the affidavit failed to show that: (1) the informants were inherently credible or provided reliable information in this instance; and (2) there was a factual basis for the information furnished. Again, we disagree on both counts.

¶ 12. Regarding the informants' credibility, defendant argues that the inherent credibility of the confidential informant who provided the location of defendant's residence could not be established by the vague statement in the affidavit that he had provided information in the past leading to an arrest. See State v. Betts, 2013 VT 53, ¶ 23, 194 Vt. 212, 75 A.3d 629 (concluding that state trooper's statement in affidavit that confidential informant had "provided . . . information in the past that has led to the arrest of at least three separate individuals for various narcotics offenses" did not permit independent analysis of informant's credibility (quotation marks omitted)); Robinson, 2009 VT 1, ¶ 9 (arriving at same conclusion with respect to police officer's statement in affidavit that confidential informant "has provided me reliable and credible information in the past" concerning cocaine deals in Addison County that "I have been able to confirm" as "accurate" (quotation marks omitted)). Defendant further argues that there was nothing to indicate that the information on this particular occasion was reliable based on either the confidential informant acting against penal interest or the police corroborating the information in any significant way. Defendant asserts that the police corroboration of the confidential informant involved only brief surveillance of the residence that did not reveal any criminal activity. See Betts, 2013 VT 53, ¶ 27 ("[The information corroborated must relate in some way to the criminal activity alleged."); see also Robinson, 2009 VT 1, ¶ 16 (same); Goldberg, 2005 VT 41, ¶ 14 (same).

7

¶ 13. To be sure, the affiant did not observe any criminal activity in corroborating the confidential informant's information concerning the location of defendant's residence. But the finding of probable cause does not rest in this case on the statements of the confidential informant. Rather, the evidence of criminal activity at his residence was provided by other information in the affidavit, including the record of defendant's and his domestic partner's regular and illegal purchases of PSE products, defendant's own statements to police concerning his drug use, and most particularly Shorty's statements tying defendant's drug and manufacturing operation to his residence. In contrast, in the cases cited by defendant in support of his argument, the information provided by confidential informants, which did nothing to confirm allegations of the defendants' criminal activities, was the only information in support of the affidavit. See Robinson, 2009 VT 1, ¶ 12 ("Here, the confidential informant was the only source of the information relied on by the affiant, defendant was otherwise unknown to police, and there were no other indicia of credibility."); see also Betts, 2013 VT 53, ¶¶ 2, 27 (summarizing facts); Goldberg, 2005 VT 41, ¶¶ 2-3, 14 (same).

¶ 14. Defendant acknowledges the trial court's findings that statements provided by Shorty and the named individual's girlfriend were inherently credible because the former was corroborated in part by the affiant and the latter was made against penal interest. He contends, however, that those statements provided "no substantial evidence relative to the charged crime of manufacturing" methamphetamine. But the issue is whether the information in the affidavit revealed circumstances from which a person of reasonable caution would conclude that evidence of a crime, not necessarily the crime of manufacturing methamphetamine, would be found in the place to be searched. See Zele, 168 Vt. at 157, 716 at 835-36. The statements made by Shorty and the named individual's girlfriend, in combination with other information in the affidavit, satisfied this standard with respect to the possession of PSE, if nothing more.

¶ 15. For similar reasons, we reject defendant's contention that the factual-basis prong of Rule 41 was not met. Defendant acknowledges that the trial court found some of statements made by Shorty and the girlfriend to be based on first-hand knowledge, which satisfies the factual-basis prong. See Arrington, 2010 VT 87, ¶ 13 (stating that factual-basis prong is satisfied when "the informant provides first-hand information"); see also Betts, 2013 VT 53, ¶ 20 (same). Defendant argues, however, that none of those statements indicated that either the girlfriend or Shorty personally observed defendant manufacturing methamphetamine. The argument does not withstand scrutiny. The named informants did not need to actually witness defendant manufacturing methamphetamine for them to have provided sufficient information to support an independent determination that evidence of that crime would be found at the location to be searched. In any event, as noted, their statements were sufficient for a neutral judge to determine that evidence of a crime—illegal possession PSE—would be found there.

Affirmed.

FOR THE COURT:

_____
Associate Justice

9