SKOGLUND, J., dissenting.
¶ 30. Because I find the confidential informant's (CI's) statements fail to satisfy the legal standard of credibility or reliability, and because I find the affiant officer neither credible nor reliable, I would hold that the search warrant was not supported by probable cause and grant defendant's motion to suppress the challenged evidence.
¶ 31. As the majority explained above, when the finding of probable cause is based upon hearsay incorporated into an affidavit, we apply the two-pronged test from Aguilar v. Texas, 378 U.S. 108, 114-15, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 415-16, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), codified in Vermont Rule of Criminal Procedure 41(d)(1). Rule 41(d)(1) requires a judicial officer to issue a warrant when *965 both the factual-basis prong and the veracity prong are satisfied, thus establishing probable cause. Here, the State failed to satisfy the veracity prong-which requires that the informant be inherently credible or that the information he provides be reliable-because there was no substantial basis established for believing the CI's hearsay to be credible.
¶ 32. First, inherent credibility was not established by showing the informant had provided correct information in the past-Officer Tiersch did not claim as much. Second, the CI's reliability on this occasion cannot be proven because his statement was not against his penal interest, nor had it been corroborated by law enforcement.
¶ 33. The information provided on this occasion cannot be deemed reliable because the informant was not acting against penal interest when he gave his information. As the majority notes, the police had enough evidence to prosecute the CI for possession of heroin based on his possession of the heroin that resulted in his overdose, prior to his interview with Officer Tiersch. However, the majority then upholds the trial court's conclusion that the CI's statements to Officer Tiersch were made against penal interest, asserting that his claim that he purchased heroin from defendant after his overdose continued his criminal drug involvement. The CI's statement to Officer Tiersch that he purchased drugs after his overdose is scant evidence of his continued involvement with drugs and, without further prosecutorial investigation, could not expose him to criminal charges under 18 V.S.A. § 4205 for possession of a regulated drug or under 18 V.S.A. § 4233 for possession of heroin specifically.
¶ 34. But, more importantly, the majority goes on to hold that the threat of retaliation for providing false information can support the requisite indicia of reliability. This is complete supposition. There is nothing in the record to suggest the CI was concerned with retaliation.
¶ 35. Furthermore, I have serious concerns about the credibility of the relied-upon information because it consisted of mere "innocent details" which were uncorroborated by Officer Tiersch. At the hospital after the CI's overdose, the CI told Officer Tiersch that he bought the heroin that resulted in his overdose from a kid named "Joe." However, when Officer Tiersch spoke with the CI two weeks later, the CI's story changed. The CI told Officer Tiersch that he had actually bought the heroin from "Doug Finkle," who had a neck tattoo, and gave Officer Tiersch a street address where he said Finkle resided. He also told Officer Tiersch that he bought more heroin from Finkle the day before this interview. The CI described the interior of Finkle's house as a mess with clothes everywhere. He claimed there were cabinets next to the fridge where Mr. Finkle had kept his heroin at some point in the past, though he noted that when he bought heroin the day before his interview with Officer Tiersch, Mr. Finkle pulled the white, unstamped baggies out of his left front pocket. The CI also claimed someone named Brittney was living at the residence. So, the sum-total of the CI's first-hand information of possible criminal activity is that he claimed he bought heroin from a man named "Doug Finkle." That is all. The specific identifying information provided in the reported statements of the informant was that the man who sold him heroin had a neck tattoo. That proved to be false.
¶ 36. Vermont's law is clear that "mere innocent details" are not enough to establish that hearsay evidence is credible, nor are they sufficient to create probable cause to issue a warrant. State v. Robinson, 2009 VT 1, ¶ 16, 185 Vt. 232, 969 A.2d 127 *966 ("[T]he corroboration of mere innocent details did not prove that the informant's allegations of [criminal activity] were reliable." (citing State v. Goldberg, 2005 VT 41, ¶ 14, 178 Vt. 96, 872 A.2d 378 ) ); see also V.R.Cr.P. 41(d). Notably, the State, when pressed at oral argument before the trial court, conceded that without a sufficient statement against penal interest, the "facts" offered by the CI are insufficient:
[B]ecause not only is [the CI] speaking against his penal interest, we can corroborate most of the details that he's giving [Officer Tiersch]: where Mr. Finkle lives, the condition of his house, who he's living with.... [A]lone they're innocent details, but when you're knowing that the CI is reporting that he is buying heroin from there, those details become more important. So I think that yes, if you knew each one of those details alone, that yes, they're all innocent.
Setting aside the unsupported assertion that a mere claim of illegal activity converts the remaining innocent details into something more substantial, the State appears to agree that the CI's information is insufficient under our jurisprudence.
¶ 37. The majority holds that a determination that "police corroborated those statements is not necessary in this case to establish their reliability to justify issuance of the warrant." Ante, ¶24. It goes on to agree that police corroboration of innocent details, by itself, cannot establish the reliability of an informant's statements, but then suggests police corroboration bolstered the CI's otherwise reliable statements. Ante, ¶25.
¶ 38. However, Officer Tiersch's "corroboration" here cannot be seen as bolstering the CI's statements. Officer Tiersch claimed he, too, had been in Mr. Finkle's residence, but he provided no information about when that visit occurred, other than that the visit was related to another criminal matter. He reported that during this previous, unrelated visit to the residence, he found that the residence was a mess with clothes everywhere and that there were cabinets right next to the fridge. Officer Tiersch also learned, separately from CI's information, that a female named Brittney had been staying at Mr. Finkle's residence. Again, these innocent details do not establish the reliability of an informant's statement or provide probable cause that a crime had been committed and that evidence of the crime will be found in the place to be searched. See State v. Cleland, 2016 VT 128, ¶ 13, 204 Vt. 23, 162 A.3d 672 (concluding probable cause determination was proper because finding was based on significant additional information in affidavit and contrasting with other cases where "the information provided by confidential informants, which did nothing to confirm allegations of the defendants' criminal activities, was the only information in support of the affidavit"). Giving the deference due to the judicial officer's initial finding of probable cause, I concede jurists can differ, but this "corroboration" of innocent details cannot be adequate to bolster reliance on the CI's claims.
¶ 39. And here we reach the critical flaw in this case. My problem in affording heightened deference to the trial judge's factual determinations and inferences derived therefrom comes from the failure of the court to sufficiently evaluate the critical issue of Officer Tiersch's veracity. There are obvious untruths in his sworn statement. In his affidavit in support of his request for a search warrant for defendant's home, the officer swore under oath that he knew "Doug Finkle" from prior law enforcement interactions and that he knew "Mr. Finkle Sr. ha[d] a tattoo on his neck" and that Mr. Finkle, Jr., his son, did not. Defendant does not have a neck tattoo.
*967 Officer Tiersch also swore that defendant was arrested on March 20, 2015 for possession of heroin, but he omitted the critical information that the charges were dropped. He also swore that defendant was arrested for selling heroin from his home on July 22, 2015. No, defendant wasn't.
¶ 40. There can be no argument that defendant proved by a preponderance of evidence that the affidavit in support of probable cause contained deliberate falsehoods or statements made with reckless disregard for the truth. See State v. Demers, 167 Vt. 349, 353, 707 A.2d 276, 278 (1997) (citing United States v. Mankani, 738 F.2d 538, 545 (2d Cir. 1984) ); Franks v. Delaware, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The court below ruled that, even assuming Officer Tiersch acted recklessly by including false statements or omitting certain facts in his affidavit, the remaining unchallenged statements in the affidavit were sufficient to establish probable cause to issue the search warrant. The majority agrees and holds that under Franks, sufficient unchallenged information remains to establish probable cause after excising the inaccuracies or omissions. Ante, ¶29. I disagree.
¶ 41. First, is it really significant that, on the day the CI claimed to have purchased heroin from defendant, Officer Tiersch observed the CI in the "vicinity" of defendant's home? Ante, ¶24. I think not. That both the CI and Officer Tiersch found defendant's house messy is irrelevant. What Brittney has to do with anything is beyond me. The layout of the kitchen provides no support that evidence of a crime will be found in defendant's house. Remember, when asked where Finkle got the heroin he allegedly sold to the CI on August 13, the CI stated that Finkle pulled the baggies out of his left front pocket. I would require a little more actual truth in an affidavit. Scrubbing the affidavit of its untruths and omissions, we are left with "innocent details," which we have held are not enough. Robinson, 2009 VT 1, ¶ 16, 185 Vt. 232, 969 A.2d 127. For the reasons stated above, I do not find the CI's statements to be otherwise reliable.
¶ 42. In Franks, the Court held that evidence seized pursuant to a search warrant may be suppressed if the defendant demonstrates by a preponderance of the evidence that: (1) the warrant was based upon false information in the supporting affidavit; and (2) the affiant either knew the information was false or included it with reckless disregard for the truth. 438 U.S. at 155-56, 98 S.Ct. 2674. Under this standard, there are two levels of inquiry that the trial court must make when assessing the evidence presented. Initially, the court must determine whether there was false information in the supporting affidavit-the trial court here plainly found that there were inaccuracy or omissions in the affidavit. Next, the court must decide whether the defendant has demonstrated that the false information was included intentionally or recklessly. Here, Officer Tiersch's affidavit was replete with untruths, which can only lead to the conclusion that he either intentionally included false information or he acted with a reckless disregard for the truth. One misstatement might constitute negligence. This level of false information suggests the problem is not mere negligence. The court below should not have credited Officer Tiersch's statements, given all the red flags that are brightly waving above.
¶ 43. Even if there were relevant facts sufficient for probable cause, any corroborative support which Officer Tiersch might lend to the CI's claims is severely undermined by the factual inaccuracies in his affidavit. In United States v. Whitley, the court found that a detective's decision to *968 identify another officer as the source of information in the affidavit, though he later testified that he did not know from where he had received the false information leading to a warrant, "certainly raises a red flag with respect to his credibility on crucial events." 249 F.3d 614, 622 (7th Cir. 2001). Considering Officer Tiersch's "corroboration" of a false physical description from a source whose reliability is not established, together with the factual inaccuracy and omission regarding defendant's history with heroin, the red flag should be on fire.
¶ 44. Courts typically find falsehoods or omissions in an affidavit to be immaterial only when they make up only a relatively small proportion of the evidence in hand. Compare United States v. Strother, 318 F.3d 64, 69-70 (1st Cir. 2003) (finding probable cause based on remaining facts after excising alleged falsehoods or correcting omissions), United States v. Canfield, 212 F.3d 713, 718 (2d Cir. 2000) (same), United States v. Barnett, 989 F.2d 546, 557 (1st Cir. 1993), United States v. Spinosa, 982 F.2d 620, 627 (1st Cir. 1992) (same), United States v. Parcels of Land, 903 F.2d 36, 46-47 (1st Cir. 1990) (same), United States v. Rumney, 867 F.2d 714, 720 (1st Cir. 1989) (same), with United States v. Fisher, 711 F.3d 460, 462, 468 (4th Cir. 2013) (finding no probable cause based on remaining facts after excising alleged falsehoods or correcting omissions), United States v. Hammond, 351 F.3d 765, 773-74 (6th Cir. 2003) (same), United States v. Curry, 751 F.2d 442, 449 (1st Cir. 1984) (same), United States v. Chesher, 678 F.2d 1353, 1362-63 (9th Cir. 1982) (same), United States v. Troxel, 564 F.Supp.2d 1235, 1250 (D. Kan. 2008) (same). Given how few facts of any real value Officer Tiersch was able to correctly corroborate, his factual inaccuracies with regard to much more important information highlight a startlingly high false-positive rate.
¶ 45. The exclusionary rule is a judicially created rule "designed to safeguard Fourth Amendment rights generally through its deterrent effect." Herring v. United States, 555 U.S. 135, 139-40, 172 L.Ed.2d 496 (2009) (quotation omitted). The nature of this particular tool, where an uncertain degree of deterrence against future constitutional violations is considered against the backdrop of the unpalatable release of a likely criminal, may dissuade judges from applying it. M. Wilson, Improbable Cause: A Case for Judging Police by a More Majestic Standard, 15 Berkeley J. Crim. L. 259, 312 (2010) ("[The] need for deterrence will seem weak when viewed with the benefit of hindsight, knowing that police uncovered a crime and a probable criminal. Thus, trial judges are naturally inclined to deny motions to suppress, even in cases exhibiting some evidence of police perjury."). Judicial attempts to protect a citizen's Fourth Amendment rights are further frustrated by well-documented police falsification and perjury, which trial court judges are often either unable or unwilling to identify. Id. at 263 n.15, 265 nn.20-21 (collecting studies identifying evidence of police falsification in affidavits and perjury during suppression hearings with muted responses by trial court judges). We should not allow hindsight bias or an innate tendency to implicitly trust those in uniform to cause us to become "accomplices in the willful disobedience of a Constitution [we] are sworn to uphold." Elkins v. United States, 364 U.S. 206, 223, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).
¶ 46. Tolerating an instance of unacceptably sloppy-if not intentionally deceitful-police work does a disservice to the law enforcement community as a whole. This case supports the disturbing conclusion that Officer Tiersch either was unsure about whom he was identifying, or, in the *969 absence of any useful facts, was willing to "corroborate" whatever was necessary to get a warrant. Needless to say, neither is an acceptable method for an officer to establish probable cause to search an individual's home under Article 11 of the Vermont Constitution.
¶ 47. For these reasons, I dissent, and I am authorized to state that Justice Robinson joins this dissent.