2010 VT 87

# State of Vermont v. Nelson Arrington

[8 A.3d 483]

No. 09-242

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed October 1, 2010

461

*Peter R. Neary,* Rutland County Deputy State's Attorney, Rutland, for Plaintiff-Appellee.

*Matthew F. Valerio,* Defender General, *Anna Saxman,* Deputy Defender General, and *Marshall Pahl,* Legal Intern, Montpelier, for Defendant-Appellant.

¶ 1. **Dooley, J.** Defendant entered a conditional guilty plea to sale of cocaine, conspiracy to sell cocaine, possession of cocaine, and possession of marijuana. He challenges the trial court's denial of his motion to suppress evidence obtained following his warrant-less arrest. He contends that his motion should have been granted because the police lacked probable cause to arrest him. For the reasons stated below, we affirm.

¶ 2. Defendant's arrest was based on information provided by an informant. Police suspected the informant of selling drugs. On January 31, 2007, a police detective approached the informant on the street and received consent to search her. The detective found two stacks of money, each containing $1100, and a digital scale. He drove the informant to the police station and found a plastic bag of crack cocaine where she had been sitting in the police car. At the station, the informant gave a statement under oath and denied that the drugs found in the car were hers. She identified a man named "Chris" as her drug supplier and stated that she owed Chris $1100 for powdered cocaine that he had given her to sell. She further stated that she cooked the powdered cocaine and turned it into twenty-eight rocks of crack cocaine and, thereafter, sold each rock for $100.

¶ 3. The informant agreed to cooperate with the police investigation into the cocaine delivery and distribution operation. The following day, February 1, 2007, the informant told the detective that she had spoken with Chris and that Chris would travel the next day from Albany, New York, to Rutland to deliver drugs to sell. On February 2, at around 2:15 p.m., the informant again called the detective to inform him that she had just spoken with Chris and that he would be arriving in Rutland in approximately half an hour. She said that he would be travelling to Rutland by driving north on Route 7.

¶ 4. The informant accompanied the detective in his cruiser to a restaurant parking lot along Route 7 so that she could identify Chris. Although she did not provide the police with a physical description of Chris, she did describe his car. The informant

waited with the detective, and at approximately 2:45 p.m. she spotted Chris's vehicle travelling north on Route 7, as predicted. The detective pulled his car onto Route 7 alongside the identified vehicle, a silver Acura, and the informant confirmed that the driver of that vehicle was the man she knew as "Chris." The detective's partner, who was nearby in an unmarked police cruiser, then stopped the identified car. The police did not observe any motor vehicle violations prior to stopping the vehicle. The detective drove by the stopped vehicle to allow the informant to confirm Chris's identity an additional time, and after she did, the detective arrested defendant without a warrant.

¶ 5. At the police station, the detective searched defendant, whom they identified as Nelson Arrington, and found three grams of marijuana and approximately thirteen grams of cocaine on his person. Defendant also gave incriminating statements. Defendant was charged with cocaine sale and possession, possession of marijuana, and conspiracy.

¶ 6. Defendant then moved to suppress all of the evidence taken following his arrest. He claimed that the police violated the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; Chapter I, Articles 10 and 11 of the Vermont Constitution; and Vermont Rule of Criminal Procedure 3 by arresting and searching him without probable cause. The State responded, in part, with a statement that the informant made under oath to the police in which she identified herself, and with the affidavit the officer filed in connection with the information filed against the informant. Following an evidentiary hearing at which the detective testified, the court found the facts outlined above and concluded that the police had probable cause to make the arrest. It thus denied defendant's motion to suppress. Defendant appeals this decision.

¶ 7. In reviewing the trial court's decision, we apply a mixed standard of review. The court's findings of fact will stand unless clearly erroneous; we review the court's legal conclusions de novo. *State v. Bryant*, 2008 VT 39, ¶ 9, 183 Vt. 355, 950 A.2d 467; *State v. Blais*, 163 Vt. 642, 643, 665 A.2d 569, 570 (1995) (mem.) ("In reviewing a determination on probable cause for a warrantless arrest, we rely on the trial court's findings of fact unless clearly erroneous; review of the probable cause determination is, however, de novo.").

■ ¶ 8. We begin with defendant's challenges to the court's factual findings. In evaluating these challenges, we note that the validity of a warrantless arrest must be determined based upon "the information possessed by the police at the time of initial detention." *State v. Phillips*, 140 Vt. 210, 216, 436 A.2d 746, 750 (1981). In making this determination, the trial court could consider the affidavit prepared by the arresting officer along with the testimony at the suppression hearing. See *State v. Smith*, 281 N.W.2d 430, 433 (S.D. 1979) ("[T]estimony, in addition to the affidavit, could properly be considered by the trial court in its determination of probable cause for the warrantless arrest . . . .").

■ ¶ 9. Defendant first contends that, contrary to the trial court's finding, the informant did not describe her supplier's car before identifying it. Defendant specifically notes that neither the informant's written statement nor the detective's affidavit in support of the information filed against defendant provides a description of the car. During the suppression hearing, however, the detective testified that the informant had described Chris's vehicle, and that the description was consistent with a silver Acura. Determining the credibility of witnesses falls within the "exclusive province" of the trial court, *State v. Leavitt*, 133 Vt. 35, 41, 329 A.2d 627, 631 (1974), and "we defer to the trier of fact's decision to credit a particular witness or piece of evidence." *State v. Bain*, 2009 VT 34, ¶ 12, 185 Vt. 541, 975 A.2d 628. Given the detective's testimony, the trial court's finding is not clearly erroneous.

■ ¶ 10. Defendant next argues that the court erred in finding that the informant predicted defendant's behavior and arrival. Defendant maintains that because the informant knew her supplier only as Chris, and because she did not provide a physical description of him, the police had no information to corroborate. Thus, defendant hypothesizes that the informant could have been pointing out an unknown citizen or an enemy whom she believed would be carrying drugs. The trial court, however, relying on the detective's affidavit and testimony, concluded that the informant sufficiently predicted defendant's behavior and arrival. The detective stated in his affidavit that defendant was identified driving along Route 7, in the direction predicted by the informant, almost exactly when the informant had predicted. Furthermore, the trial court concluded that the fact that informant knew her supplier

only as Chris did not undermine her position, crediting the detective's testimony that it is common for drug dealers to use street names. As stated above, it is for the trial court, not this Court, to evaluate the credibility of witnesses and weigh the evidence. See *State v. Merchant*, 173 Vt. 249, 257, 790 A.2d 386, 393 (2001) ("It is axiomatic in this state that the trier of fact is given the sole determination of the weight of the evidence, the credibility of witnesses, and the persuasive effect of the testimony." (quotation omitted)). Given the detective's testimony and affidavit, the trial court's finding was not clearly erroneous.

■ ¶ 11. We next address defendant's assertion that the police lacked probable cause to make a warrantless arrest. As noted above, we review the trial court's legal conclusion de novo. Probable cause for issuance of an arrest warrant or a warrantless arrest "exists when the facts and circumstances known to an officer are sufficient to lead a reasonable person to believe that a crime was committed and that the suspect committed it." *State v. Chicoine*, 2007 VT 43, ¶ 8, 181 Vt. 632, 928 A.2d 484 (mem.) ("Probable cause for a warrantless arrest requires the same level of evidence needed for the issuance of a warrant."). "The concept of probable cause is a practical, nontechnical one that we evaluate in a common sense manner," *Blais*, 163 Vt. at 643, 665 A.2d at 570 (quotation omitted), and we must "review a finding of probable cause to see if it was based on substantial evidence." *Chicoine*, 2007 VT 43, ¶ 8.

■ ¶ 12. As the trial court recognized, we apply a two-pronged test, referred to as the *Aguilar-Spinelli* test, to evaluate probable cause determinations based on hearsay evidence for warrant applications made under V.R.Cr.P. 41. *State v. Goldberg*, 2005 VT 41, ¶ 9, 178 Vt. 96, 872 A.2d 378; see *Spinelli v. United States*, 393 U.S. 410 (1969); *Aguilar v. Texas*, 378 U.S. 108 (1964). While the United States Supreme Court has "abandoned this standard and held that the United States Constitution requires a 'totality of the circumstances' approach to probable cause determinations, *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983), we have continued to apply the two-pronged test to cases decided under the Vermont Constitution." *Goldberg*, 2005 VT 41, ¶ 9. Defendant suggests that the trial court mistakenly applies the *Gates* test here, although it expressly stated that it was applying *Aguilar-Spinelli*. We have not yet directly addressed whether the *Aguilar-Spinelli* test

applies in warrantless-arrest cases, and we do not decide that question here. Assuming arguendo that *Aguilar-Spinelli* applies, its requirements are satisfied. See *State v. Alger*, 151 Vt. 315, 318 n.*, 559 A.2d 1087, 1090 n.* (1989) (noting that *Aguilar-Spinelli* test is stricter than *Gates*, and where *Aguilar-Spinelli* test is satisfied, discussion of *Gates* is unnecessary).

¶ 13. As we have explained, the first prong of the *Aguilar-Spinelli* test "requires an analysis of the informant's basis of knowledge, while the second examines his or her veracity." *Goldberg*, 2005 VT 41, ¶ 9. The first prong is "not concerned with the integrity or veracity of the informant, but with the actual source of the information." *State v. Barrett*, 132 Vt. 369, 373, 320 A.2d 621, 624 (1974). When, as here, the informant provides first-hand information, this prong is satisfied. See *id.* at 374, 320 A.2d at 625 (finding first prong of test satisfied when "the informer's report to the affiant concerns first-hand experience"); see also *State v. Morris*, 165 Vt. 111, 130, 680 A.2d 90, 102 (1996) (basis of knowledge prong satisfied by informant's statement "that he or she was present during some of the alleged drug transactions"); *State v. Bruyette*, 158 Vt. 21, 33, 604 A.2d 1270, 1276 (1992) (prong satisfied where information based on personal knowledge).

¶ 14. The second prong of the *Aguilar-Spinelli* test requires that "either the informant is inherently credible or that the information from that informant is reliable on this occasion." *State v. Ballou*, 148 Vt. 427, 434, 535 A.2d 1280, 1284 (1987). In this case, the trial court found no evidence to show that the informant was inherently credible, and in fact, the detective indicated that he believed the informant lied in her written statement about cocaine found in the police cruiser. Thus, to prevail on the second prong, the State had to demonstrate that the information provided was reliable on this occasion.

¶ 15. Several considerations support the trial court's determination that the informant's information was reliable on this occasion. First, there was strong evidence that the informant was involved in selling drugs at the retail level in Rutland. The officers had conducted a controlled drug purchase from the informant using another informant-buyer, and the informant was found with the identified money on her person. She had two stacks of money

of equal amounts and a scale for weighing drugs. Crack cocaine was found in the police car where she had been sitting.

¶ 16. These facts were also consistent with her story that she had an out-of-state supplier to whom she owed one of the stacks of money and that she had prepared the separate stack to pay him. The officer testified that the arrangement the informant described having with her supplier "happens quite frequently." Suppliers "front drugs to someone who's going to sell" and who then either wires or delivers money to the supplier, or the supplier may "come up for . . . a half an hour and pick up their money and drop off more drugs."

¶ 17. Second, the informant described defendant's vehicle, predicted the time and route of his arrival into Rutland, and personally identified him on three occasions. Recently, in *State v. Robinson*, we held that the accuracy of predictive information that the defendant would be driving a specific vehicle on a specific route at a specific time was not sufficient to make reliable a tip that the defendant's vehicle contained drugs because the corroboration was of "mere innocent details." 2009 VT 1, ¶¶ 15-16, 185 Vt. 232, 969 A.2d 127. Our holding that such information is not enough in *Robinson* is not a holding that such information is irrelevant or that it cannot be considered along with other information in establishing reliability. Indeed, we relied upon exactly this type of information in determining the presence of probable cause in *State v. Goyette*, 156 Vt. 591, 596, 594 A.2d 432, 435 (1991).

¶ 18. We held in *State v. Lamb* that accurate predictive information can add validity to a tip, especially if it supplies the police with "inside information." 168 Vt. 194, 197, 720 A.2d 1101, 1103 (1998) (quotation omitted). Although *Lamb* is a reasonable suspicion case, its reasoning is instructive here. We relied in part on the reasoning of the United States Supreme Court in *Alabama v. White*, 496 U.S. 325 (1990), that "[b]ecause only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities." *Lamb*, 168 Vt. at 198, 720 A.2d at 1103 (quotation omitted).

¶ 19. Third, the identity of the confidential informant was known to the police, as well as to defendant and the trial court, and she

gave a statement under oath describing her past involvement with defendant. Thus, we distinguish the information from this informant from that of an "anonymous professional informant" whose information is more likely to be based on rumor or conjecture. *Bruyette*, 158 Vt. at 34, 604 A.2d at 1276 (quotation omitted). In providing her identity, she exposed herself to retaliation. In providing a statement under oath, she exposed herself to perjury prosecution should the information be inaccurate. See, e.g., *United States v. Hernandez*, 85 F.3d 1023, 1028 (2d Cir. 1996).

¶ 20. Defendant argues that we should treat the informant in this case as an anonymous informant because the officer did not disclose her identity in the affidavit accompanying the information against defendant. We disagree. Whatever the police officer may have thought in preparing his affidavit, the informant fully exposed herself and her information to scrutiny, she gave the basis of her information, she exposed herself to retaliation, and she assumed the obligation of her oath. We see no reason to treat the informant as other than a named informant, and to give weight to this factor. See 2 W. LaFave, Search and Seizure § 3.3(c), at 136 (4th ed. 2004) ("[T]here is much more reason to conclude that veracity is shown when the informant comes forward as an affiant or when his identity is disclosed in the affidavit or upon the motion to suppress." (footnotes omitted)); see also *Commonwealth v. Harding*, 539 N.E.2d 83, 86 (Mass. App. Ct. 1989) (observing that where "a named and identified individual is the source of information," rather than an anonymous informant, "the requirement of reliability is relaxed," and "[i]nformation provided by a named informant is generally accorded more weight." (quotation omitted)); *State v. Dietrich*, 2009-NMCA-31, ¶ 13, 204 P.3d 748 ("[T]he strictures of *Aguilar-Spinelli* were aimed primarily at *unnamed* police informers." (quotation omitted)).

¶ 21. Fourth, the informant provided information that implicated her in commission of a crime; we have recognized that this can be a significant factor in determining the reliability of that information for purposes of finding probable cause. See *Goldberg*, 2005 VT 41, ¶¶ 11-13; *Morris*, 165 Vt. at 130, 680 A.2d at 103 ("[A]dmissions against penal interest imply that police could elect to use the statements to prosecute the informant . . . ."); *Ballou*, 148 Vt. at 435, 535 A.2d at 1284 (noting that statements against penal interest from informants are "indicia of truthful-

ness"). The informant's statements showed that she was part of a conspiracy to market drugs in Rutland, and her identification of defendant produced a witness to testify against her with respect to the nature of the conspiracy and her involvement in it. Under Vermont law, conspiracy to sell or deliver regulated drugs is a separate felony punishable by up to five years in jail. See 13 V.S.A. §§ 1404, 1409. Her statements increased her criminal liability exposure. Cf. *Snover v. State*, 837 N.E.2d 1042, 1049 (Ind. Ct. App. 2005) ("An informant who possessed drugs provided credible information about his source when he implicated himself in a plan to deliver to someone else the drugs he obtained from the source, making himself guilty of possession with intent to deliver rather than just possession."). She gave specific information about her criminal activity, well beyond general statements that "merely create a suspicion of the informant's involvement in criminal activity." *Morris*, 165 Vt. at 130, 680 A.2d at 103. We conclude that this factor weighs significantly in establishing the reliability of the informant's information and the finding of probable cause.

¶ 22. Defendant makes a number of arguments against a conclusion that the above four factors were sufficient to find probable cause in this case. Defendant argues that the informant's information could not be reliable because she denied that the cocaine found in the police car came from her, an obvious falsehood. We emphasize that we are not concluding that the second prong of *Aguilar-Spinelli* is met based on the inherent credibility of the informant. If that were the case, the falsehood would adversely affect any assessment of her credibility and undermine a finding of probable cause based on that credibility. In this case, in contrast, we are concluding that the indicia of reliability of the information itself is sufficient for a finding of probable cause. The fact that the informant made a self-serving declaration to try to prevent liability for an additional crime does not undercut our reliability assessment.

¶ 23. Defendant also argues that we should not find the identification information reliable because the informant was attempting to assist the police in her own self-interest to reduce the consequences of her criminal activity. We recognize the possible motives that could lead a criminal defendant to serve as an informant and provide information about the criminal activity of another person in return for lenient treatment. In this case,

however, it would have become clear very quickly if her information was inaccurate, and the disclosure of the inaccuracy would have hurt the informant's position rather than helping it. We do not believe that the informant's motive in assisting the police in this case undercuts a finding of reliability of her information and identification of defendant.

¶ 24. Defendant finally argues that the trial court improperly deferred to the detective's judgment in its assessment of probable cause. We have stated above our standard of review, *supra*, ¶ 7, and it does not include deference to the determination of the officer that probable cause existed. On the other hand, testimony of the officer with respect to the significance of the information provided by the informant is relevant to determining the significance and weight of the probable cause factors, and the trial court properly considered such testimony, as have we.

¶ 25. Because we find that the information supplied by the informant was reliable on this occasion, and that there was a basis for informant's knowledge, we conclude that both prongs of the *Aguilar-Spinelli* test were satisfied. We further find that the informant's information and identification of defendant gave the detective sufficient evidence on which to base the arrest. Therefore, we uphold the trial court's denial of the motion to suppress.

*Affirmed.*