*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2010-210

JANUARY TERM, 2011

| | |
|---|---|
| State of Vermont | } APPEALED FROM: |
| | } |
| v. | } District Court of Vermont, |
| | } Unit No. 3, Washington Circuit |
| | } |
| Robert Gilman | } DOCKET NO. 952-8-09 Wncr |

Trial Judge: Brian J. Grearson

In the above-entitled cause, the Clerk will enter:

Defendant appeals from a judgment of conviction of DUI and related counts. He contends the trial court's denial of a motion to suppress was based on erroneous findings. We agree in part, and therefore reverse and remand for further proceedings

The following is a summary of the evidence adduced at the hearing on defendant's motion to suppress and at the subsequent court trial. In the early morning hours of July 18, 2009, a police officer observed a vehicle traveling well in excess of the posted speed limit on Route 12 in the Town of Berlin. The officer activated his siren and blue lights and attempted to stop the vehicle, which increased speed. During the ensuing pursuit the officer observed the vehicle cross the center line several times and at one point was able to observe the driver—a young male— when the vehicle spun around so that it faced the police cruiser. The officer eventually reported the vehicle's license plate number to dispatch and discontinued the chase. Dispatch was able to locate the identity and address of the vehicle's owner, and several officers arrived at the location shortly thereafter, where they observed the vehicle involved in the pursuit parked in the driveway.

An officer knocked on the front door and spoke with defendant's mother through the screen, informing her that they were trying to locate a young male—possibly her son—involved in a recent high-speed pursuit. When told that defendant was upstairs sleeping, the officers asked his mother if they could enter and if she could have defendant come down and speak with them. What occurred thereafter was the subject of conflicting testimony at the suppression hearing and trial. The officers testified that they were given permission to enter; that defendant's mother then shouted upstairs to defendant that the police wished to speak with him; and that he eventually appeared, whereupon the officers recognized him from the pursuit and observed clear signs of intoxication. Defendant was arrested and later administered a blood alcohol test, which registered .206 BAC.

Defendant's mother testified that she did not give the police permission to enter, and that when she returned from speaking to her son the police had entered into the kitchen area on their

own. She further testified that the police told her if defendant did not come down they would go up and get him. She recalled that defendant initially refused to come down, and "I told him that if he didn't come down then [the police] had said they were going to come and get him." Defendant's girlfriend, who was present, also recalled defendant's mother "telling [defendant] that he needed to come downstairs because the cops were there, and if he didn't come downstairs they were coming in to get him."

Defendant moved to suppress the DUI evidence on the ground that the police entry into the home was nonconsensual and that he was coerced into appearing. Defendant claimed that his mother "never gave [the police] permission to come into her house and Defendant came down stairs only because the police made it clear that if he did not come down on [his] own, they would go get him." The court denied the motion, acknowledging the conflicting testimony about the police entry but finding that "[t]he credible evidence is that the police entered the home with [defendant's mother's] consent" and waited for defendant to appear. The court did not specifically address defendant's corollary claim that he was coerced into appearing by the officers' threat to come up and "get him."

The case proceeded to trial, where defendant moved to reconsider the court's denial of the suppression motion. In its order denying the motion to reconsider, the court reviewed the evidence adduced at trial and concluded that defendant had not presented any material new evidence. As to whether defendant's appearance was coerced, the court found that although defendant's mother "testified in both hearings that the police told her if he did not come down they would go up and get him . . . [she] did <u>not</u> testify in either proceeding that she told <u>the defendant</u> that if he did not come down stairs the police would come up and get him." (Emphasis added.) In the absence of such evidence, the court found defendant's "subjective belief that he had no choice but to come down stairs" to be insufficient to prove coercion. Thus, the court concluded that defendant had adduced no new material evidence on the question "whether the police had permission to be in the home and whether the defendant was coerced into coming down the stairs."

In reviewing the trial court's rulings, we apply a mixed standard of review, upholding its findings of fact unless clearly erroneous, while evaluating its legal conclusions de novo. <u>State v. Arrington</u>, 2010 VT 87, ¶7.[*] Evaluating the credibility of witnesses "falls within the exclusive province of the trial court," and "we defer to the trier of fact's decision to credit a particular witness or piece of evidence." <u>Id</u>. ¶ 9 (quotations omitted).

Applying this standard, we find no basis to disturb the court's finding that the police entry into the home was consensual. The evidence on this point was conflicting, and the court's decision to credit the officers' testimony was well within its discretion and was not clearly erroneous.

The trial court's conclusion that defendant's appearance was voluntary and not coerced is another matter. As noted, the court's conclusion was based, in substantial part, on its finding that

---

[*] The State asserts that the defendant has appealed solely from the court's initial ruling on the motion to suppress, but defendant's notice of appeal and briefing show plainly that he has challenged both the initial denial and the subsequent denial of the motion to reconsider.

although defendant's mother testified that the police had threatened to "go up and get him" if he did not come down, there was no testimony that she had communicated this threat to defendant. The record, quoted earlier, reveals precisely to the contrary; defendant's mother testified that she conveyed the officer's threat to defendant, and defendant's girlfriend corroborated her testimony. The evidence thus plainly contradicts the court's finding, which must be deemed clearly erroneous. That finding, moreover, patently informed the court's conclusion that defendant was not coerced into appearing before the police. Therefore, the error cannot be deemed harmless.

It may be that the trial court would ultimately find the officers' testimony specifically denying any threat of force to be more credible than the testimony of defendant's mother and girlfriend, but it made no such finding, and therefore the matter must be remanded to the trial court to address the issue.

Reversed and remanded.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Denise R. Johnson, Associate Justice


_____
Marilyn S. Skoglund, Associate Justice