NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 111

No. 2017-313

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Orange Unit, |
| | Criminal Division |
| | |
| Douglas J. Finkle, Sr. | April Term, 2018 |

Timothy B. Tomasi, J.

Thomas J. Donovan, Jr., Attorney General, and Elizabeth L. Anderson, Assistant Attorney
  General, Montpelier, for Plaintiff-Appellee.

Andrew B. Delaney of Martin & Associates, P.C., Barre, for Defendant-Appellant.


PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.


¶ 1.     **CARROLL, J.**   Following his conditional plea to drug charges, defendant Doug Finkle, Sr. appeals the trial court's denial of his motion to suppress and dismiss. He argues that the police affidavit submitted in support of a request for a search warrant, which relied upon information provided by a confidential informant (CI), did not establish the requisite probable cause to issue the warrant and search his residence. He also argues that his assertion of factual errors and omissions in the affidavit compelled the court to hold a hearing before denying the motion. We affirm.

¶ 2.     On August 15, 2016, Officer Steven Tiersch of the Randolph Police Department applied for a warrant to search defendant's residence based on the following facts alleged in his

affidavit. On July 31, 2016, Officer Tiersch responded to a report of a suspected heroin overdose. When the officer arrived at the Randolph residence, he found an unconscious man, the CI, lying on the floor turning blue. The officer observed a spoon and hypodermic syringe lying near the CI's feet. On the spoon was a Q-tip with a white powder residue that was later identified as heroin. The syringe was empty. The CI regained consciousness at the scene after emergency responders gave him a dose of Narcan to revive him.[1] When confronted with the spoon and syringe, the CI acknowledged that he had overdosed on heroin. After he was transported to the hospital, the CI told the officer that he had purchased five bags of heroin from a "kid" named Joe. The CI did not provide any more information at that time but indicated that he would be willing to speak to the officer later about where he obtained the heroin.

¶ 3. On August 14, 2016, Officer Tiersch met again with the CI and asked him where he obtained the heroin. The CI told the officer that he got it from Doug Finkle at Finkle's residence. He provided the officer with a specific address. Knowing that there was a Doug Finkle, Sr. and Doug Finkle, Jr., the officer asked the CI whom he meant by Doug Finkle. The CI stated that Doug Finkle had a tattoo on his neck. The officer, who was familiar with Doug Finkle, Sr. from prior law enforcement interactions, knew that Doug Finkle, Sr. had a tattoo on his neck and lived at the address provided by the CI. He also knew that Doug Finkle, Jr. did not have a tattoo on his neck and lived in a camper on the same property but not at the main residence. When the officer asked the CI why he initially stated that the heroin came from a kid named Joe, the CI responded that he was afraid to identify defendant at the time but that he had purchased heroin only from defendant.[2]

---

[1] Narcan is a brand name for a nasal-spray form of naloxone, a drug used for emergency treatment of opioid overdoses.

[2] According to the dissent, nothing in the record suggests that the CI was concerned with retaliation. In fact, the CI's own statement, as reported by Officer Tiersch in his affidavit admitted into the record, indicates that the CI did not initially reveal his source of heroin for fear of

¶ 4. When asked when he had last purchased heroin from defendant, the CI stated that he purchased seven bags of heroin from defendant in two separate trips to defendant's residence during the previous day, August 13. The CI stated that when the officer had seen him the day before in the vicinity of defendant's residence, which the officer confirmed in the affidavit, he was on his way there to purchase heroin. The CI further stated that both times he purchased heroin, defendant pulled out white unstamped baggies from his left pocket. He also stated that he purchased heroin at defendant's residence the day before he overdosed on July 31. Based on his experience, the officer knew that heroin is often sold in stamped or unstamped wax paper baggies. The CI described defendant's residence as a "mess" with "clothes everywhere," which was consistent with what the officer had observed when he was in defendant's residence during prior law enforcement interactions. The officer had also noticed cabinets next to a refrigerator in defendant's residence, which is where the CI stated defendant kept his heroin. The CI stated that a woman named Brittney was living at defendant's residence, and the officer had also learned that a person with that name had been living there for a couple of weeks.

¶ 5. The officer further stated that defendant was arrested on March 20, 2015, for possession of heroin and on July 22, 2015, for the sale or delivery of heroin from his residence. The officer noted that the CI had no criminal history in Vermont but that he had been charged with possession of heroin in Connecticut. The officer further stated that the CI was not providing this information to obtain consideration on any pending charges. The officer explained that the CI did not want to be named in the affidavit because he feared retaliation by defendant or defendant's associates if they learned that he had provided information to law enforcement officers.

---

retaliation. In rejecting defendant's argument that the CI was not reliable because he initially claimed to have bought heroin from a kid named Joe, the trial court found that the CI had provided a rational explanation for his initial reluctance to name defendant at the time of his overdose.

3

¶ 6.    Based on these statements in the officer's affidavit, a superior court judge issued a warrant to search defendant's residence.  The police executed the search warrant on August 24, 2016, at which time they encountered a woman named Brittney and defendant's two daughters. The police did not find any heroin in the residence; however, they found used needles and empty baggies that Brittney acknowledged belonged to her, as well as a bag in the bathroom containing drug paraphernalia.  Based on his conversation with Brittney and other information he gathered, Officer Tiersch applied for and obtained a second warrant to search defendant's vehicles and person.

¶ 7.    On August 29, 2016, defendant was stopped in his vehicle pursuant to the second warrant.  During a search of his vehicle and person, the police recovered cocaine, suboxone, and packets of heroin.  Defendant was arrested and charged with possession of heroin, possession of cocaine, possession of a narcotic, and dispensing heroin.  He filed a motion to suppress all evidence obtained through the searches and to dismiss the charges.  He argued that: (1) the affidavit submitted in support of the initial warrant request contained false statements and omissions of fact that were made, at minimum, with reckless disregard for the truth; (2) the affidavit on its face did not contain sufficient information to establish probable cause to support issuance of the warrant; and (3) all evidence gathered by police had to be suppressed and the charges dismissed because the second warrant stemmed from the first warrant and thus was "fruit of the poisonous tree."

¶ 8.    In denying defendant's motion, the trial court accepted as true defendant's following claims regarding inaccuracies or omissions in the initial affidavit: (1) defendant does not have a neck tattoo; (2) defendant was not arrested for selling heroin on July 22, 2015; and (3) the charges stemming from his March 20, 2015 arrest for possession of heroin were dismissed. The court determined, however, that when considering the affidavit without these alleged inaccuracies, it provided sufficient credible and reliable information to conclude that evidence of a crime would be found at the place to be searched.  The court found that the CI's information was

4

based on first-hand knowledge and was reliable because it was provided against the CI's penal interest and was corroborated in part by Officer Tiersch. The court also determined that because the affidavit supported the warrant apart from the inaccuracies, no hearing on defendant's motion was necessary.

¶ 9. On appeal, defendant argues that the trial court erred in denying his motion to suppress and dismiss because: (1) the CI's statements were neither credible nor reliable; (2) without the challenged information, the affidavit did not establish probable cause to support issuance of a warrant to search his residence; and (3) the court was required to hold a hearing before denying the motion.

¶ 10. Before considering these arguments, we set forth the relevant law, which is well-established. In general, "[i]n reviewing a motion to suppress, we are deferential to the factual determinations and inferences made in the initial determination of probable cause, but we review conclusions of law without deference." State v. Chaplin, 2012 VT 6, ¶ 9, 191 Vt. 583, 44 A.3d 153 (mem.). When the motion seeks to suppress evidence obtained pursuant to a warrant, we give "great deference" to the judicial officer's initial finding of probable cause, id. (quotation omitted), and "[r]esolution of doubtful or marginal cases should be largely determined by the preference to be accorded warrants," State v. Ballou, 148 Vt. 427, 434, 535 A.2d 1280, 1284 (1987). "Even under this heightened deference with regard to [the judicial officer's] factual determinations and inferences derived therefrom, however, the ultimate question of whether" the facts supplied in the warrant provide sufficient probable cause for the search "is still a matter of law appropriate for fresh appellate review." Chaplin, 2012 VT 6, ¶ 9.

¶ 11. "Generally, probable cause exists when the affidavit sets forth such information that a judicial officer would reasonably conclude that a crime has been committed and that evidence of the crime will be found in the place to be searched." State v. Robinson, 2009 VT 1, ¶ 6, 185 Vt. 232, 969 A.2d 127 (quotations omitted). "We view the affidavits in support of

5

probable cause in a common sense manner and do not subject them to hypertechnical scrutiny." Id. (quotation omitted). When the finding of probable cause is based upon hearsay incorporated into the affidavit, as in cases like the instant one where a law enforcement officer is reporting information supplied by a CI, we apply the two-pronged test from Aguilar v. Texas, 378 U.S. 108, 114-15 (1964), and Spinelli v. United States, 393 U.S. 410, 415-16 (1969), codified in Vermont Rule of Criminal Procedure 41(d)(1).[3] State v. Cleland, 2016 VT 128, ¶ 6, 204 Vt. 23, 162 A.3d 672. Rule 41(d)(1) provides that a judicial officer "shall" issue a warrant upon a finding of probable cause "based upon substantial evidence, which may be hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished."

¶ 12.    The veracity prong "requires that either the informant is inherently credible or that the information from that informant is reliable on this occasion." State v. Arrington, 2010 VT 87, ¶ 14, 188 Vt. 460, 8 A.3d 483 (quotation omitted). Inherent credibility may be established by showing that the informant has provided correct information in the past, while information provided on a particular occasion is generally deemed reliable "if the informant acted against penal interest, or if police corroborated the information to the point where it would be reasonable for them to rely on it as accurate." State v. Goldberg, 2005 VT 41, ¶ 11, 178 Vt. 96, 872 A.2d 378 (quotation omitted).

¶ 13.    The factual-basis prong "requires that the affidavit transmit the factual basis for any conclusions drawn by the informant so that the judicial officer can perform an independent analysis of the facts and conclusions." Ballou, 148 Vt. at 434, 535 A.2d at 1284. That prong is satisfied if the information supplied by a CI and contained in the law enforcement officer's affidavit is based

---

[3] We have continued to apply this two-pronged test under the Vermont Constitution, even though the U.S. Supreme Court abandoned it in Illinois v. Gates, 462 U.S. 213, 238-39 (1983), and adopted a totality-of-the-circumstances approach to probable cause determinations. State v. Goldberg, 2005 VT 41, ¶ 9, 178 Vt. 96, 872 A.2d 378.

on first-hand personal observations set forth in some detail; hence, it "concerns the actual source of the information rather than the integrity or veracity of the informant." State v. Senna, 2013 VT 67, ¶ 17, 194 Vt. 283, 79 A.3d 45; see Arrington, 2010 VT 87, ¶ 13 (same).

¶ 14. A defendant challenging a probable cause finding on grounds that the supporting affidavit contains false information or omissions "must establish by a preponderance of the evidence that the government agent who produced the affidavit made the false statements or omissions intentionally, knowingly, or with reckless disregard for the truth." State v. Demers, 167 Vt. 349, 353, 707 A.2d 276, 278 (1997) (citing Franks v. Delaware, 438 U.S. 154, 155-56 (1978)). "If defendant satisfies this initial burden, the reviewing court, in order to determine whether probable cause was established, will consider the supporting affidavit as though the omitted information had been supplied and as though accurate, rather than inaccurate, information had been included." Id. at 353-54, 707 A.2d at 278 (citing Franks, 438 U.S. at 156).

¶ 15. Here, in challenging the denial of his motion to suppress and dismiss, defendant first argues that the CI's statements were neither credible nor reliable. In part, defendant conflates the two prongs of the test set forth in Rule 41(d)(1) by arguing that the CI did not have first-hand knowledge of the information he provided to Officer Tiersch because he falsely told the officer that the person who sold him heroin had a tattoo on his neck. As stated above, the factual-basis prong concerns only the source of the information, not the credibility of the informant or the reliability of the information on that particular occasion, and thus that prong is satisfied if the information provided is based on first-hand observations. See Cleland, 2016 VT 128, ¶ 15. As the trial court found, that was plainly the case here. Thus, the information contained in the affidavit satisfied the first prong of the Rule 41 test.

¶ 16. Defendant further argues, however, that the veracity prong of the test was not satisfied because: (1) there was no claim that the CI was inherently credible; and (2) the statements the CI provided on this occasion could not be considered reliable because they were not made

7

against his penal interest and Officer Tiersch corroborated only mundane, innocent facts discoverable by any member of the public. As for the first argument, the affidavit made no claim that the CI was inherently credible because he had provided correct information in the past, and the trial court did not conduct an analysis on this question, focusing instead on the reliability of the CI's information. The question, then, is whether the information provided by the CI was reliable because it was either provided against his penal interest or corroborated by police. Chaplin, 2012 VT 6, ¶ 12 ("Reliability of particular hearsay statements is generally established either if the informant acted against penal interest, or if police corroborated the information to the point where it would be reasonable for them to rely on it as accurate." (quotations omitted)).

¶ 17. According to defendant, the trial court's conclusion that the CI's statements to Officer Tiersch were made against penal interest and thus reliable was clearly erroneous because: (1) before he made the statements police already had enough evidence to prosecute him for possession of heroin; and (2) the CI's only legitimate motive was to shift the focus of the police investigation from him to someone else. For the reasons set forth below, we do not find these arguments persuasive.

¶ 18. In State v. Ballou, we cautioned against the potential misuse of finding statements reliable based on a determination that they were made against penal interest. 148 Vt. at 435 n.3, 535 A.2d at 1284 n.3. Nevertheless, in more recent cases we have continued to reaffirm the ongoing viability of considering whether informant statements were made against penal interest when determining their reliability in the context of the Aguilar-Spinelli test set forth in Rule 41. See, e.g., Cleland, 2016 VT 128, ¶¶ 6, 11; Senna, 2013 VT 67, ¶ 18; State v. Betts, 2013 VT 53, ¶ 20, 194 Vt. 212, 75 A.3d 629; Goldberg, 2005 VT 41, ¶ 11; see also 2 W. LaFave, Search and Seizure § 3.3(c), at 160-61 (5th ed. 2012) (stating that four justices in United States v. Harris, 403 U.S. 573 (1971), first found informant statements reliable because they were made against penal interest and that this point of view "has been rather consistently followed by the lower courts, with

the result that admissions against penal interest by an informant are regularly relied upon as a means of showing that his information is reliable").

¶ 19.    The critical inquiry is whether a CI's statement should be considered reliable as made against penal interests in light of the circumstances surrounding the statement on that particular occasion.    See LaFave, supra, § 3.3(c), at 162 ("Courts . . . should not utilize the admission-against-penal-interest concept in a blunderbuss fashion, but instead should assess in a more careful fashion, preferably upon a full disclosure by the police of all relevant circumstances, what the significance of that admission is in the context of the particular case.").    For example, in State v. Chaplin, we concluded that although a CI acted against her penal interest in admitting to selling inspection stickers allegedly stolen by the defendant, her statement that the defendant "committed the burglary was certainly not against penal interests but instead was intended to show that she did not commit the burglary."  2012 VT 6, ¶ 12; see also State v. Morris, 165 Vt. 111, 130, 680 A.2d 90, 103 (1996) (stating that CI's admission to having previously smoked marijuana was not admission against penal interest "because one can be prosecuted only for possession or deliverance of marijuana [and thus] a statement of past use cannot, in and of itself, result in prosecution").

¶ 20.    Defendant argues that there was little additional risk in the CI's naming the source of his heroin because police already had strong evidence of his possession of heroin in connection with his recent overdose.  But the CI's statements provided additional evidence of his criminal drug possession beyond the residue found on the Q-tip at the scene of his overdose.  See LaFave, supra, § 3.3(c), at 174 (stating that if informant's implication of another person also exposed informant "as more culpable than originally suspected, there is good reason to accept the informant's assertions as trustworthy" (quotation omitted)).  Notably, when Officer Tiersch interviewed the CI on August 14, the CI told the officer that he had purchased seven bags of heroin from the defendant the day before, indicating that he was still involved in criminal activity.

¶ 21. More importantly, "one who knows the police are already in a position to charge him with a serious crime will not lightly undertake to divert the police down blind alleys." Id. at 169-70 (refuting reasoning that criminal caught "red-handed" had nothing to lose by providing self-incriminating information); see Arrington, 2010 VT 87, ¶ 23 (finding that informant's naming of her source for drugs was reliable because "it would have become clear very quickly if her information was inaccurate, and the disclosure of the inaccuracy would have hurt the informant's position rather than helping it"). In such circumstances, the requisite indicia of reliability may result more from the threat of police retaliation should the information prove to be false than the admission of criminal conduct, LaFave, supra, § 3.3(c), at 171, but that does not detract from the information's reliability.

¶ 22. For similar reasons, we are not persuaded by defendant's assertion that the CI's plain intent was to shift the focus of the drug investigation onto another person. Officer Tiersch's affidavit explicitly stated that the CI was "not providing this information in order to have consideration on pending charges." As noted, the CI arguably had more to lose by providing false information to police rather than remaining silent about the source of his heroin.

¶ 23. Moreover, although the CI was not named in the affidavit and was not a citizen-informant to whom we would afford a presumption of veracity, Goldberg, 2005 VT 41, ¶ 15 (information provided by named citizen-informant unconnected with police is presumed reliable), neither was he an anonymous informant or "a protected police stool pigeon . . . whose indiscretions are tolerated by the police on a continuing basis in exchange for information and leads given by him from time to time." LaFave, supra, § 3.3(c), at 165 (quotation omitted); see United States v. Salazar, 945 F.2d 47, 50-51 (2d Cir. 1991) ("[A] face-to-face informant must, as a general matter, be thought more reliable than an anonymous telephone tipster, for the former runs the greater risk that he may be held accountable if his information proves false."); see also Arrington, 2010 VT 87, ¶¶ 19-20 (comparing reliability of types of informants). Under these particular circumstances,

the superior court did not err in finding that the known informant's statements as to where he obtained his heroin after police responded to his heroin overdose were made against his penal interests and thus reliable. See LaFave, supra, § 3.3(c), at 162-63 (quoting Dutton v. Evans, 400 U.S. 74, 89 (1970), for proposition that "a person's statement 'against his penal interest' carries with it 'indicia of reliability' if it may also be said that the statement was made 'under circumstances when he would have no reason to lie' ").

¶ 24.    Given our determination that the trial court did not err in finding that the CI's statements were made against penal interest, a determination that police corroborated those statements is not necessary in this case to establish their reliability to justify issuance of the warrant. See id. § 3.3(f), at 217 (stating that police corroboration is not "essential to a finding of probable cause based primarily upon information received from an informant"). We note, however, that, in addition to the fact that the known CI made statements against his penal interest, Officer Tiersch was familiar with defendant's residence and previous criminal drug activity. See Betts, 2013 VT 53, ¶ 30 (recognizing "that law enforcement officers may at times rely on personal knowledge of a defendant's prior criminal activity to assess the reliability of an informant's tip" (quotation and alterations omitted)). Officer Tiersch also confirmed some details of the CI's information, including the condition and arrangement of the inside of defendant's residence and the fact that someone named Brittney was living with defendant. Further, Officer Tiersch observed defendant in the vicinity of defendant's residence on the day when the CI stated he went to defendant's house twice to purchase heroin.

¶ 25.    We recognize that police corroboration of innocent details, by itself, generally cannot establish the reliability of an informant's statements. See Chaplin, 2012 VT 6, ¶ 18 (stating that police corroboration of "an innocuous fact, which would have drawn no attention independent of the hearsay, cannot then be used to bootstrap hearsay statements over the Aguilar-Spinelli test threshold"); see, e.g., McManis, 2010 VT 63, ¶ 15 (concluding that police "drive-by of defendant's

house and Department of Motor Vehicle records check revealed no evidence of any criminal conduct and therefore did nothing to corroborate the criminal conduct alleged by the CI" (quotation omitted)); Goldberg, 2005 VT 41, ¶ 14 (concluding that corroboration of "peripheral details" of informant's statements "did nothing to confirm the allegations of criminal conduct"). But see Gates, 462 U.S. at 243 n.13 (stating that "innocent behavior frequently will provide the basis for a showing of probable cause"); United States v. Canfield, 212 F.3d 713, 720 (2d Cir. 2000) (stating that if informant proves to be truthful about even innocent details, "there is a higher probability the incriminating facts are true"); LaFave, supra, § 3.3(f), at 217 (noting that "type of information considered as tending to corroborate [informant's hearsay statements] has ranged from the innocent conduct in Draper [v. United States, 358 U.S. 307 (1959)] to that which itself created strong suspicion in Ker [v. California, 374 U.S. 23 (1963)]" (quotation omitted)). In this case, however, police corroboration merely bolstered the CI's otherwise reliable statements.

¶ 26. Defendant also argues that the superior court wrongly analyzed this case under Franks v. Delaware. According to defendant, when Officer Tiersch's affidavit is amended to remove the alleged false statements and add the alleged omission, the remaining facts in the affidavit are insufficient to establish probable cause to support issuance of the warrant. Defendant further argues that the court should have held a hearing before denying his motion to suppress and dismiss.

¶ 27. In his motion, defendant argued that Officer Tiersch's affidavit provided false information and omitted relevant information by stating that: (1) the CI indicated defendant had a neck tattoo and he (Officer Tiersch) knew defendant had a neck tattoo—when in fact defendant had no such tattoo; (2) defendant was arrested for possession of heroin on March 20, 2015—but omitting the fact that charges associated with that arrest were dismissed; and (3) defendant was arrested for selling heroin out of his residence on July 22, 2015—when in fact he was in federal

custody at that time.[4]  Defendant requested a hearing on the motion.  The court did not hold a hearing, instead ruling that even assuming Officer Tiersch acted recklessly in including false statements or omitting certain facts in his affidavit, the remaining unchallenged statements in the affidavit were sufficient to establish probable cause to issue the search warrant.

¶ 28.  In Franks, the U.S. Supreme Court held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary for the finding of probable cause, the Fourth Amendment requires that a hearing be held at defendant's request.  In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

438 U.S. at 155-56; see Demers, 167 Vt. at 353-54, 707 A.2d at 278 (accord); see also Canfield, 212 F.3d at 718 ("The ultimate inquiry is whether, after putting aside erroneous information and material omissions, there remains a residue of independent and lawful information sufficient to support probable cause." (quotation omitted)).  The Court in Franks elaborated that there is "a presumption of validity with respect to the affidavit supporting the search warrant" and that a defendant's allegations of reckless disregard for the truth "must be more than conclusory" and

---

[4] The dissent asserts that Officer Tiersch made "obvious untruths in his sworn statement" when he averred that defendant had a neck tattoo; that defendant had been charged with possession of heroin in March 2015, but did not indicate that the charge was later dropped; and that defendant was arrested for selling heroin out of his home in July 2015, at a time when defendant was incarcerated.  Post, ¶ 39.  The dissent further asserts that Officer Tiersch was either unsure about whom he was identifying or was willing to say whatever was necessary to obtain a warrant.  It is important to keep in mind, however, that, in denying defendant's motion to suppress, the trial court did not conduct a Franks hearing and assumed only for purposes of argument that Officer Tiersch acted with reckless disregard in asserting these facts.  Further, as explained below, it was defendant's initial burden to submit evidence demonstrating that the officer intentionally or recklessly made false statements.  Under these circumstances, we cannot say that Officer Tiersch was obviously untruthful in his sworn statement.

13

"must be accompanied by an offer of proof" supported by affidavits or "otherwise reliable statements of witnesses." 438 U.S. at 171. The Court further stated that even when these requirements are satisfied, "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." Id. at 171-72.

¶ 29. Here, the superior court assumed for the purposes of argument that defendant made the requisite threshold showing of reckless disregard for the truth with respect to the challenged statements; however, the court concluded the remaining unchallenged information established probable cause to issue the search warrant. See Franks, 138 U.S. at 155-156. For the reasons stated above, we agree. Hence, no Franks hearing was required and the court did not err when it made the probable cause finding without first holding a hearing.

Affirmed.

FOR THE COURT:

_____

Associate Justice

¶ 30. **SKOGLUND, J., dissenting.** Because I find the confidential informant's (CI's) statements fail to satisfy the legal standard of credibility or reliability, and because I find the affiant officer neither credible nor reliable, I would hold that the search warrant was not supported by probable cause and grant defendant's motion to suppress the challenged evidence.

¶ 31. As the majority explained above, when the finding of probable cause is based upon hearsay incorporated into an affidavit, we apply the two-pronged test from Aguilar v. Texas, 378 U.S. 108, 114-15 (1964), and Spinelli v. United States, 393 U.S. 410, 415-16 (1969), codified in Vermont Rules of Criminal Procedure 41(d)(1). Rule 41(d)(1) requires a judicial officer to issue a warrant when both the factual-basis prong and the veracity prong are satisfied, thus establishing

14

probable cause. Here, the State failed to satisfy the veracity prong—which requires that the informant be inherently credible or that the information he provides be reliable—because there was no substantial basis established for believing the CI's hearsay to be credible.

¶ 32. First, inherent credibility was not established by showing the informant had provided correct information in the past—Officer Tiersch did not claim as much. Second, the CI's reliability on this occasion cannot be proven because his statement was not against his penal interest, nor had it been corroborated by law enforcement.

¶ 33. The information provided on this occasion cannot be deemed reliable because the informant was not acting against penal interest when he gave his information. As the majority notes, the police had enough evidence to prosecute the CI for possession of heroin based on his possession of the heroin that resulted in his overdose, prior to his interview with Officer Tiersch. However, the majority then upholds the trial court's conclusion that the CI's statements to Officer Tiersch were made against penal interest, asserting that his claim that he purchased heroin from defendant after his overdose continued his criminal drug involvement. The CI's statement to Officer Tiersch that he purchased drugs after his overdose is scant evidence of his continued involvement with drugs and, without further prosecutorial investigation, could not expose him to criminal charges under 18 V.S.A. § 4205 for possession of a regulated drug or under 18 V.S.A. § 4233 for possession of heroin specifically.

¶ 34. But, more importantly, the majority goes on to hold that the threat of retaliation for providing false information can support the requisite indicia of reliability. This is complete supposition. There is nothing in the record to suggest the CI was concerned with retaliation.

¶ 35. Furthermore, I have serious concerns about the credibility of the relied-upon information because it consisted of mere "innocent details" which were uncorroborated by Officer Tiersch. At the hospital after the CI's overdose, the CI told Officer Tiersch that he bought the heroin that resulted in his overdose from a kid named "Joe." However, when Officer Tiersch spoke

with the CI two weeks later, the CI's story changed. The CI told Officer Tiersch that he had actually bought the heroin from "Doug Finkle," who had a neck tattoo, and gave Officer Tiersch a street address where he said Finkle resided. He also told Officer Tiersch that he bought more heroin from Finkle the day before this interview. The CI described the interior of Finkle's house as a mess with clothes everywhere. He claimed there were cabinets next to the fridge where Mr. Finkle had kept his heroin at some point in the past, though he noted that when he bought heroin the day before his interview with Officer Tiersch, Mr. Finkle pulled the white, unstamped baggies out of his left front pocket. The CI also claimed someone named Brittney was living at the residence. So, the sum-total of the CI's first-hand information of possible criminal activity is that he claimed he bought heroin from a man named "Doug Finkle." That is all. The specific identifying information provided in the reported statements of the informant was that the man who sold him heroin had a neck tattoo. That proved to be false.

¶ 36. Vermont's law is clear that "mere innocent details" are not enough to establish that hearsay evidence is credible, nor are they sufficient to create probable cause to issue a warrant. State v. Robinson, 2009 VT 1, ¶ 16, 185 Vt. 232, 969 A.2d 127 ("[T]he corroboration of mere innocent details did not prove that the informant's allegations of [criminal activity] were reliable." (citing State v. Goldberg, 2005 VT 41, ¶ 14, 178 Vt. 96, 872 A.2d 378)); see also V.R.Cr.P. 41(d). Notably, the State, when pressed at oral argument before the trial court, conceded that without a sufficient statement against penal interest, the "facts" offered by the CI are insufficient:

> [B]ecause not only is [the CI] speaking against his penal interest, we can corroborate most of the details that he's giving [Officer Tiersch]: where Mr. Finkle lives, the condition of his house, who he's living with . . . . [A]lone they're innocent details, but when you're knowing that the CI is reporting that he is buying heroin from there, those details become more important. So I think that yes, if you knew each one of those details alone, that yes, they're all innocent.

16

Setting aside the unsupported assertion that a mere claim of illegal activity converts the remaining innocent details into something more substantial, the State appears to agree that the CI's information is insufficient under our jurisprudence.

¶ 37. The majority holds that a determination that "police corroborated those statements is not necessary in this case to establish their reliability to justify issuance of the warrant." Ante, ¶ 24. It goes on to agree that police corroboration of innocent details, by itself, cannot establish the reliability of an informant's statements, but then suggests police corroboration bolstered the CI's otherwise reliable statements. Ante, ¶ 25.

¶ 38. However, Officer Tiersch's "corroboration" here cannot be seen as bolstering the CI's statements. Officer Tiersch claimed he, too, had been in Mr. Finkle's residence, but he provided no information about when that visit occurred, other than that the visit was related to another criminal matter. He reported that during this previous, unrelated visit to the residence, he found that the residence was a mess with clothes everywhere and that there were cabinets right next to the fridge. Officer Tiersch also learned, separately from CI's information, that a female named Brittney had been staying at Mr. Finkle's residence. Again, these innocent details do not establish the reliability of an informant's statement or provide probable cause that a crime had been committed and that evidence of the crime will be found in the place to be searched. See State v. Cleland, 2016 VT 128, ¶ 13, 204 Vt. 23, 162 A.3d 672 (concluding probable cause determination was proper because finding was based on significant additional information in affidavit and contrasting with other cases where "the information provided by confidential informants, which did nothing to confirm allegations of the defendants' criminal activities, was the only information in support of the affidavit"). Giving the deference due to the judicial officer's initial finding of probable cause, I concede jurists can differ, but this "corroboration" of innocent details cannot be adequate to bolster reliance on the CI's claims.

¶ 39. And here we reach the critical flaw in this case. My problem in affording heightened deference to the trial judge's factual determinations and inferences derived therefrom comes from the failure of the court to sufficiently evaluate the critical issue of Officer Tiersch's veracity. There are obvious untruths in his sworn statement. In his affidavit in support of his request for a search warrant for defendant's home, the officer swore under oath that he knew "Doug Finkle" from prior law enforcement interactions and that he knew "Mr. Finkle Sr. ha[d] a tattoo on his neck" and that Mr. Finkle, Jr., his son, did not. Defendant does not have a neck tattoo. Officer Tiersch also swore that defendant was arrested on March 20, 2015 for possession of heroin, but he omitted the critical information that the charges were dropped. He also swore that defendant was arrested for selling heroin from his home on July 22, 2015. No, defendant wasn't.

¶ 40. There can be no argument that defendant proved by a preponderance of evidence that the affidavit in support of probable cause contained deliberate falsehoods or statements made with reckless disregard for the truth. See State v. Demers, 167 Vt. 349, 353, 707 A.2d 276, 278 (1997) (citing United States v. Mankani, 738 F.2d 538, 545 (2d Cir. 1984)); Franks v. Delaware, 438 U.S. 154, 156 (1978). The court below ruled that, even assuming Officer Tiersch acted recklessly by including false statements or omitting certain facts in his affidavit, the remaining unchallenged statements in the affidavit were sufficient to establish probable cause to issue the search warrant. The majority agrees and holds that under Franks, sufficient unchallenged information remains to establish probable cause after excising the inaccuracies or omissions. Ante, ¶ 29. I disagree.

¶ 41. First, is it really significant that, on the day the CI claimed to have purchased heroin from defendant, Officer Tiersch observed the CI in the "vicinity" of defendant's home? Ante, ¶ 24. I think not. That both the CI and Officer Tiersch found defendant's house messy is irrelevant. What Brittney has to do with anything is beyond me. The layout of the kitchen provides no support that evidence of a crime will be found in defendant's house. Remember, when asked where Finkle

got the heroin he allegedly sold to the CI on August 13, the CI stated that Finkle pulled the baggies out of his left front pocket. I would require a little more actual truth in an affidavit. Scrubbing the affidavit of its untruths and omissions, we are left with "innocent details," which we have held are not enough. Robinson, 2009 VT 1, ¶ 16. For the reasons stated above, I do not find the CI's statements to be otherwise reliable.

¶ 42. In Franks, the Court held that evidence seized pursuant to a search warrant may be suppressed if the defendant demonstrates by a preponderance of the evidence that: (1) the warrant was based upon false information in the supporting affidavit; and (2) the affiant either knew the information was false or included it with reckless disregard for the truth. 438 U.S. at 155-56. Under this standard, there are two levels of inquiry that the trial court must make when assessing the evidence presented. Initially, the court must determine whether there was false information in the supporting affidavit—the trial court here plainly found that there were inaccuracy or omissions in the affidavit. Next, the court must decide whether the defendant has demonstrated that the false information was included intentionally or recklessly. Here, Officer Tiersch's affidavit was replete with untruths, which can only lead to the conclusion that he either intentionally included false information or he acted with a reckless disregard for the truth. One misstatement might constitute negligence. This level of false information suggests the problem is not mere negligence. The court below should not have credited Officer Tiersch's statements, given all the red flags that are brightly waving above.

¶ 43. Even if there were relevant facts sufficient for probable cause, any corroborative support which Officer Tiersch might lend to the CI's claims is severely undermined by the factual inaccuracies in his affidavit. In United States v. Whitley, the court found that a detective's decision to identify another officer as the source of information in the affidavit, though he later testified that he did not know from where he had received the false information leading to a warrant, "certainly raises a red flag with respect to his credibility on crucial events." 249 F.3d 614, 622

19

(7th Cir. 2001).  Considering Officer Tiersch's "corroboration" of a false physical description from a source whose reliability is not established, together with the factual inaccuracy and omission regarding defendant's history with heroin, the red flag should be on fire.

¶ 44.    Courts typically find falsehoods or omissions in an affidavit to be immaterial only when they make up only a relatively small proportion of the evidence in hand.  Compare United States v. Strother, 318 F.3d 64, 69-70 (1st Cir. 2003) (finding probable cause based on remaining facts after excising alleged falsehoods or correcting omissions), United States v. Canfield, 212 F.3d 713, 718 (2d Cir. 2000) (same), United States v. Barnett, 989 F.2d 546, 557 (1st Cir. 1993), United States v. Spinosa, 982 F.2d 620, 627 (1st Cir. 1992) (same), United States v. Parcels of Land, 903 F.2d 36, 46-47 (1st Cir. 1990) (same), United States v. Rumney, 867 F.2d 714, 720 (1st Cir. 1989) (same), with United States v. Fisher, 711 F.3d 460, 462, 468 (4th Cir. 2013) (finding no probable cause based on remaining facts after excising alleged falsehoods or correcting omissions), United States v. Hammond, 351 F.3d 765, 773-74 (6th Cir. 2003) (same), United States v. Curry, 751 F.2d 442, 449 (1st Cir. 1984) (same), United States v. Chesher, 678 F.2d 1353, 1362-63 (9th Cir. 1982) (same), United States v. Troxel, 564 F. Supp. 2d 1235, 1250 (D. Kan. 2008) (same).  Given how few facts of any real value Officer Tiersch was able to correctly corroborate, his factual inaccuracies with regard to much more important information highlight a startlingly high false-positive rate.

¶ 45.    The exclusionary rule is a judicially created rule "designed to safeguard Fourth Amendment rights generally through its deterrent effect."  Herring v. United States, 555 U.S. 135, 139-40, 129 S.Ct. 695, 699 (2009) (quotation omitted).  The nature of this particular tool, where an uncertain degree of deterrence against future constitutional violations is considered against the backdrop of the unpalatable release of a likely criminal, may dissuade judges from applying it.  M. Wilson, Improbable Cause: A Case for Judging Police by a More Majestic Standard, 15 Berkeley J. Crim. L. 259, 312 (2010) ("[The] need for deterrence will seem weak when viewed

with the benefit of hindsight, knowing that police uncovered a crime and a probable criminal. Thus, trial judges are naturally inclined to deny motions to suppress, even in cases exhibiting some evidence of police perjury."). Judicial attempts to protect a citizen's Fourth Amendment rights are further frustrated by well-documented police falsification and perjury, which trial court judges are often either unable or unwilling to identify. Id. at 263 n.15, 265 n.20-21 (collecting studies identifying evidence of police falsification in affidavits and perjury during suppression hearings with muted responses by trial court judges). We should not allow hindsight bias or an innate tendency to implicitly trust those in uniform to cause us to become "accomplices in the willful disobedience of a Constitution [we] are sworn to uphold." Elkins v. United States, 364 U.S. 206, 223 (1960).

¶ 46. Tolerating an instance of unacceptably sloppy—if not intentionally deceitful— police work does a disservice to the law enforcement community as a whole. This case supports the disturbing conclusion that Officer Tiersch either was unsure about whom he was identifying, or, in the absence of any useful facts, was willing to "corroborate" whatever was necessary to get a warrant. Needless to say, neither is an acceptable method for an officer to establish probable cause to search an individual's home under Article 11 of the Vermont Constitution.

¶ 47. For these reasons, I dissent, and I am authorized to state that Justice Robinson joins this dissent.

_____

Associate Justice

21