Filed 10/08/24

VERMONT SUPERIOR COURT
Washington Unit
65 State Street
Montpelier VT  05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-01287

Wade Whitehouse v State of Vermont et al

## Opinion and Order on the State's Motion for Summary Judgment

Plaintiff Wade Whitehouse claims that State police used unconstitutionally excessive force while arresting and processing him for violating a court-imposed curfew condition-of-release late in the evening on January 1, 2023.  His principal complaints appear to be that the police should not have administered Narcan when he slumped over and became nonresponsive and either should not have placed him in handcuffs or should not have done so in a manner causing him pain.  Mr. Whitehouse characterizes the alleged excessive force as violating numerous federal constitutional provisions and seeks $100,000,000 in compensatory damages under 42 U.S.C. § 1983; he does not seek injunctive relief.  The State has filed a summary judgment motion addressing the substance of Mr. Whitehouse's claim.

As a preliminary matter, the Court notes that named defendants include the State of Vermont and "Unknown Officers," which presumably refers to the police officers involved in the arrest.  The only proof of service in the record relates to the State; there is no proof of service regarding any individual police officers.  Counsel for the State, Debbie Stevens, Esq., entered her appearance in this case on behalf of the State only.  Nevertheless, counsel expressly seeks summary judgment on the substance of Mr. Whitehouse's § 1983 claim on behalf of both the State and the "Unknown Officers," even

though damages claims are not permissible under 42 U.S.C. § 1983 against the State, and the Unknown Officers have never been identified and served. *See Will v. Michigan*, 491 U.S. 58, 71 (1989) (the State is not a person subject to damages claims under § 1983); *Heleba v. Allbee*, 160 Vt. 283, 286 (1992). As neither party has raised any issues or objections to these conceptual and procedural matters, and because the motion poses a straightforward legal matter, the Court will proceed to rule on the motion as presented.

I.      *Procedural Standard*

Summary judgment procedure is "an integral part of the . . . Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Morrisseau v. Fayette*, 164 Vt. 358, 363 (1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). Summary judgment is appropriate if the evidence in the record, referred to in the statements required by Vt. R. Civ. P. 56(c)(1), shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Vt. R. Civ. P. 56(a); *Gallipo v. City of Rutland*, 163 Vt. 83, 86 (1994) (summary judgment will be granted if, after adequate time for discovery, a party fails to make a showing sufficient to establish an essential element of the case on which the party will bear the burden of proof at trial). The Court derives the undisputed facts from the parties' statements of fact and the supporting documents. *Boulton v. CLD Consulting Engineers, Inc.*, 2003 VT 72, ¶ 29, 175 Vt. 413, 427. A party opposing summary judgment may not simply rely on allegations in the pleadings to establish a genuine issue of material fact. Instead, it must come forward with deposition excerpts, affidavits, or other evidence to establish such a dispute. *Murray v. White*, 155 Vt. 621,

628 (1991). Speculation is insufficient. *Palmer v. Furlan*, 2019 VT 42, ¶ 10, 210 Vt. 375, 380.

The State's motion rigorously complies with Rule 56(c)(1). It is supported by a detailed statement of undisputed material facts with citations to the record, an affidavit from one of the police officers involved in Mr. Whitehouse's arrest plainly based on his personal knowledge, and numerous video exhibits (both body camera and wall-mounted footage from the police station) extensively documenting Mr. Whitehouse's arrest and treatment at the station.

Mr. Whitehouse was specifically informed through a court notice of the need for his response to comport with Rule 56. Mr. Whitehouse's opposition filing does not come close to complying with Rule 56(c)(2), which requires as follows:

> A nonmoving party responding to a statement of undisputed material facts and asserting that a fact is genuinely disputed, that the materials cited do not establish the absence of a genuine dispute, or that the moving party cannot produce admissible evidence to support the fact, must file a paragraph-by-paragraph response, with specific citations to particular parts of materials in the record that the responding party asserts demonstrate a dispute, including depositions, documents, electronically stored information, affidavits, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other admissible materials. The responding party must reproduce each numbered paragraph of the moving party's statement before including the response thereto. To the extent that the responding party asserts that there are additional material facts that should be considered, the party may file a separate and concise statement of additional material facts in numbered paragraphs, with specific citations to particular parts of admissible materials in the record.

Mr. Whitehouse filed nothing resembling a "paragraph-by-paragraph response, with specific citations to particular parts of materials in the record that the responding party asserts demonstrate a dispute" of fact. Nor did he file any statement of additional material facts. Though "pro se litigants receive some leeway from the courts, they are

still 'bound by the ordinary rules of civil procedure.'" *Zorn v. Smith*, 2011 VT 10, ¶ 22, 189 Vt. 219, 228 (citation omitted). Overlooking Mr. Whitehouse's noncompliance with the Rule in the circumstances of this case would wholly undermine the purpose of summary judgment procedure. "As the United States Supreme Court has pointed out, '[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather an integral part of the . . . Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' The central purpose of summary judgment is 'to avoid a useless trial.'" *Morrisseau v. Fayette*, 164 Vt. 358, 363 (1995) (citations omitted).

Accordingly, under Vt. R. Civ. P. 56(e)(2), the Court treats the well-supported facts asserted in the State's statement of material facts to be undisputed.

II.    *Analysis*

It helps to review the applicable law before reviewing the facts and how the law applies to them.

A.    *Excessive Force*

Although Mr. Whitehouse cites numerous constitutional amendments as bases for his claim, the U.S. Supreme Court has been clear that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Once it is established that there was a seizure, and here there can be no doubt that there was one, the following principles guide the analysis:

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of

"'the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against the countervailing governmental interests at stake. Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. The Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested, nor by the mistaken execution of a valid search warrant on the wrong premises. With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.

*Id.* at 396–97.

With these standards in mind, it is clear that Mr. Whitehouse's focus on whether the police should have exercised their discretion to give him a citation for the curfew violation rather than arresting him has marginal relevance. Certainly, the police had probable cause to arrest him. They knew he was in violation of a court-imposed condition of release. Violations of conditions of release are punishable by up to a "fine of $1,000.00 or imprisonment for six months, or both." 13 V.S.A. § 7559(a). They are misdemeanors.

*See* 13 V.S.A. § 1 ("Any other provision of law notwithstanding, any offense whose maximum term of imprisonment is more than two years, for life, or which may be punished by death is a felony. Any other offense is a misdemeanor."). In this case, the misdemeanor was occurring in the police officers' presence. "A law enforcement officer may arrest without a warrant a person whom the officer has probable cause to believe has committed or is committing a misdemeanor in the presence of the officer." Vt. R. Crim. P. 3(b). Even if it had not occurred in the officers' presence, one may be arrested without a warrant for a curfew violation. *See* Vt. R. Crim. P. 3(c)(12)(A). Vermont's Conditions of Release form expressly advises:

> IF YOU VIOLATE ANY OF THESE CONDITIONS, YOU MAY BE CHARGED WITH A NEW CRIME.
> Each violation is subject to prosecution for criminal contempt with a maximum possible penalty of imprisonment for six months, a $1,000 fine, or both. Violation of certain conditions may result in your immediate arrest, and a violation of any condition may result in the issuance of a warrant seeking your arrest. In addition, the Court may consider revoking your bail, or you may be subject to more stringent conditions of release. You must follow these conditions until your case is closed or until the Court changes the conditions.

Vermont Bail and Conditions for Release Order Form, available at

https://www.vermontjudiciary.org/sites/default/files/documents/200-00344%20-

%20Bail%20%26%20Conditions%20of%20Release%20Order%20-

%20JustUsNet%20%26%20public%20site%20%26%20ODY.pdf. Whatever confusion Mr. Whitehouse may have had about the matter at the time of his arrest may inform some of his subjective motivations the night of his arrest, but it has little, if any, relevance to his excessive force claim.[1]

---

[1] Mr. Whitehouse cites to page 7 of DOC Directive 430.11 (Response to Furlough Violations), as though that DOC Policy means something relevant to whether the police

B.     *The Undisputed Facts*

The undisputed material facts, as accepted by the Court, may be summarized as follows. Mr. Whitehouse was shopping in a grocery store late at night. Police officers were informed that he had a court-imposed curfew condition of release that he was violating by several hours. They decided to arrest him. Mr. Whitehouse became angry, rude, and was not cooperative. He did not attempt to flee or fight the officers, but he was oppositional and struggled as they placed him in handcuffs. Once he was in the police car, his girlfriend was permitted to hug and kiss him, and she can be seen reaching into the car.

On the ride to the police station, Mr. Whitehouse became completely silent. Once there, the rear door was opened, revealing that Mr. Whitehouse was slumped over and completely nonresponsive to the police officer, who was attempting to get his attention. He appeared to be completely unconscious. An officer determined to give him two doses of Narcan. *See State v. Finkle*, 2018 VT 111, ¶ 2 n.1, 209 Vt. 76, 80 ("Narcan is a brand name for a nasal-spray form of naloxone, a drug used for emergency treatment of opioid overdoses."). He did not immediately revive. The officer then appears to have quickly and firmly rubbed his chest, and he revived immediately. Upon doing so, he protested that he had just been sleeping, and that he was very tired after having "partied" so much over the last few days. Emergency medical technicians ("EMT") were summoned.

Inside the station, Mr. Whitehouse's behavior deteriorated promptly and severely. He started rocking, swaying, and convulsing and could not keep still. Initially he

---

had authority to arrest him for a violation of a court-imposed condition of release. It does not. Page 7 has the DOC graduated sanctions rubric for furlough violation purposes. It has no bearing on this case.

complained of the handcuffs. An officer managed to uncuff his hands in response, at which point one hand was attached to a ring on the wall and the other was free. Thereafter, the rocking, swaying, and convulsing continued, and he largely was unable to communicate with the officers or the EMT once they arrived. The EMT promptly took him to a hospital, ending any police interaction relevant here.

The above narrative is documented almost in its entirety in the video recordings in the evidence.

C.    *The Legal Issues*

Mr. Whitehouse objects that the police affidavit submitted by the State in support of summary judgment is not admissible and that the extensive video evidence is misleading because it does not include the entire course of events the night of the arrest. The Court perceives no issue as to the admissibility of the police affidavit. It was authored by one of the police officers involved in the arrest, plainly is based on his personal knowledge, and is completely consistent with the extensive video recordings of the events of the evening. Nor the does the Court see any issue as to the extensive video footage in the record. It covers much of the evening, if not all, and Mr. Whitehouse does not explain, per Rule 56, evidence of what any missing footage would have revealed.

Mr. Whitehouse appears to view as excessive force the fact that he was handcuffed and that the police administered Narcan when he was (as he alleges) only sleeping. Mr. Whitehouse immediately was uncooperative when the police first began the arrest. There was nothing unreasonable about placing him in handcuffs. To the extent he argues that the handcuffs injured him in some unreasonable way, there is no evidence of it in the record. And, when he complained about the handcuffs at the station, the police

acted to uncuff him, clearly to avoid any unnecessary discomfort or injury while keeping him restrained.

Mr. Whitehouse's Narcan argument also has no merit. The argument appears to be that he did not need Narcan because he was only sleeping. But the test is one of the objective reasonableness of the conduct and the need for the use of force. On this record, the circumstances appearing to the officers reasonably looked like Mr. Whitehouse may have overdosed on opioids. He was slumped over and entirely nonresponsive. The police officers who administered the two Narcan doses clearly were trying not to hurt Mr. Whitehouse but to save his life. Moreover, there is no evidence, supported by a proper submission, that the Narcan harmed Mr. Whitehouse in any way.[2] The record does not support his claim concerning the use of Narcan. *Cf. McFall v. Bass*, Case No. 3:20-CV-973, *2, 2023 WL 2241432 (N.D. Ind. Feb. 24, 2023) (evidence did not support due process violation of prisoner over alleged wrongful administration of Narcan).

Speaking more broadly, the course of events of the evening is well documented in the video footage in the record. There is nothing in the video record that comes close to an unconstitutional excessive force.

Given those rulings, it is unnecessary to address the remaining issues in the parties' briefs.[3]

---

[2] Mr. Whitehouse asserts in argument that the Narcan—rather than any opioids consumed by him—caused him to experience the witnessed symptoms of overdose. There is no evidentiary foundation for that allegation. Both parties submitted into the record documents with certain information about Narcan. Mr. Whitehouse asks the Court to strike the one submitted by the State. The Court has disregarded both documents for purposes of this decision and considers Mr. Whitehouse's request moot.

[3] As noted at the outset of the opinion, the State is not a "person" that may be sued under Section 1983. *Will*, 491 U.S. at 71. Summary judgment is entered in its favor on that

<u>Conclusion</u>

For the foregoing reasons, the State's motion for summary judgment is granted.

Electronically signed on Monday, October 7, 2024, per V.R.E.F. 9(d).

_____
Timothy B. Tomasi
Superior Court Judge

---

basis as well. Also, while the Court has found in Defendant's favor, on this record, as to the merits of the excessive force claim, summary judgment is also supported in favor of the individual defendants based on qualified immunity. Under these facts, it cannot be said that the officers acted outside of the scope of their discretionary authority or that they acted in violation of clearly established law. On that basis, they are also entitled to qualified immunity. *See, e.g, Jones v. Treubig*, 963 F.3d 214, 224 (2d Cir. 2020) (discussing immunity standard).